THE STATE OF OHIO, APPELLEE, *v.* JOHNSON, APPELLANT.

[Cite as State *v.* Johnson (1986), 24 Ohio St. 3d 87.]

(No. 85-93—Decided June 18, 1986.)

88

*John T. Corrigan,* prosecuting attorney, and *Allan B. Levenberg,* for appellee.

*James R. Willis,* for appellant.

CLIFFORD F. BROWN, J. This court has thoroughly and painstakingly reviewed the entire record in this case. Because we are convinced that the record affirmatively demonstrates that appellant was denied his constitutional right to the effective assistance of counsel, we hereby reverse appellant's convictions, vacate the death sentence, and remand the cause for further proceedings.

We turn our attention first to the failure of defense counsel to conduct any investigation into appellant's background for purposes of obtaining evidence in mitigation, and their resulting failure to present any such evidence at the penalty stage of the proceeding.

Our examination of the record reveals that counsel for the defense openly stated to the court that he had not even discussed with his client the penalty aspect of the case.[3] Counsel then asked for, and was given, a

---

[3] Specifically, defense counsel's statement was as follows:

"We would like to have an opportunity to — the hearing, I anticipate that it will not be an extensive hearing and I would like a chance to discuss this with my co-counsel.

ten-minute recess. Following this recess, the trial court, with the acquiescence of defense counsel, set the hearing for the very next day. At the hearing, the defense presented only the unsworn statement of appellant. No mitigating evidence of any kind was offered.

This scenario, depicting as it does the complete lack of preparation and zeal on the part of defense counsel regarding the question of whether their client should live or die, compels the conclusion that appellant was deprived of any effective, meaningful assistance from his counsel at this obviously critical stage of the proceedings.

" 'Of all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive, for it affects his ability to assert any other rights he may have.' " *United States* v. *Cronic* (1984), 466 U.S. 648, 654, quoting Schaefer, Federalism and State Criminal Procedure (1956), 70 Harv. L. Rev. 1, 8. "Unless the accused receives the effective assistance of counsel, 'a serious risk of injustice infects the trial itself.' " *Cronic, supra,* at 656, quoting *Cuyler* v. *Sullivan* (1980), 446 U.S. 335, 343.

The United States Supreme Court has found that "[f]or purposes of describing counsel's duties * * * [a] capital sentencing proceeding need not be distinguished from an ordinary trial." *Strickland* v. *Washington* (1984), 466 U.S. 668, 687. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* at 691. A lawyer has a duty to investigate "the circumstances of the case and to explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction. * * *" 1 A.B.A. Standards for Criminal Justice (1982 Supp.), No. 4-4.1.

In cases similar to the one at bar, the federal courts have held that a lack of reasonable investigation and preparation for the sentencing phase of a capital trial constitutes ineffective assistance of counsel.[4] In *Pickens* v.

---

"I have not had an opportunity to discuss it with the defendant.

"I would request that maybe I can have ten minutes or so with the defendant to explain to him what our position is and what we anticipate happening with the mitigation hearing and we would like for him to consider what action we would like for him to take."

[4] Generally, claims of ineffective assistance of counsel are evaluated by a two-part test: "First, the defendant must show that counsel's performance was deficient. * * * Second, the defendant must show that the deficient performance prejudiced the defense. * * *" *Strickland* v. *Washington* (1984), 466 U.S. 668, 687. Accord *State* v. *Lytle* (1976), 48 Ohio St. 2d 391, 396-397 [2 O.O.3d 495]. However, there are exceptions to this "cause-and-prejudice" test. In *United States* v. *Cronic* (1984), 466 U.S. 648, 659-660, the Supreme Court noted that there are "some occasions when although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial. *Powell* v. *Alabama,* 287 U.S. 45 (1932), was such a case." As stated by Justice Sutherland in *Powell* at 58-59: "It is not enough to assume that counsel * * * thought there was no defense, and exercised their best judgment in proceeding to trial without preparation. Neither they nor the court could say what a prompt and thoroughgoing investigation might disclose as to the facts. No attempt was made to investigate. No oppor-

*Lockhart* (C.A. 8, 1983), 714 F. 2d 1455, the defendant was sentenced to die. His attorney had failed to investigate defendant's background and offered no evidence in mitigation. The circuit court viewed this as an abdication by the attorney of his responsibility toward his client, which resulted in imposition of the death penalty by default.

"* * * Given the severity of the potential sentence and the reality that the life of * * * [the defendant] was at stake, we find that it was incumbent upon * * * [his] counsel to offer mitigating proof. There exists no indication in the record that * * * [counsel] made any tactical decision; it appears much more likely that he abdicated all responsibility for defending his client in the sentencing phase. We cannot view such an abdication as meeting the level of effective assistance required under the sixth amendment. * * * [I]t is only *after* a full investigation of *all* the mitigating circumstances that counsel can make an informed, tactical decision about which information would be most helpful to the client's case. In the present case, it is undisputed counsel failed to make *any* investigation whatsoever. * * * He was left with no case to present. A total abdication of duty should never be viewed as permissible trial strategy. * * * Here, counsel's default deprived * * * [the defendant] of the possibility of bringing out even a single mitigating factor. Mitigating evidence clearly would have been admissible. * * * The jury would have considered it and possibly been influenced by it. * * * We find that * * * [the defendant] was actually and substantially prejudiced in the penalty phase of the case." *Id.* at 1467. (Emphasis *sic.*) See, also, *Blake* v. *Kemp* (C.A. 11, 1985), 758 F. 2d 523, certiorari denied (1985), ____ U.S. ____, 88 L. Ed. 2d 367; *King* v. *Strickland* (C.A. 11, 1983), 714 F. 2d 1481.

It is quite clear from the foregoing that the duty of defense counsel to investigate his client's background for mitigating factors is an indispensable component of the constitutional requirement that a criminal defendant — and particularly one on trial for his life — be afforded effective representation and assistance from his lawyer. The maladroit presentation offered by appellant's attorneys in the sentencing phase did not, by any standard, meet that requirement. No mitigating evidence of any kind was offered. No continuance was requested for purposes of investigating appellant's background for mitigating factors. The only "evidence" for the defense heard by the jury was a lengthy unsworn statement by appellant protesting his innocence, followed by a closing argument by defense

---

tunity to do so was given. Defendants were immediately hurried to trial. * * * [A] defendant, charged with a serious crime, must not be stripped of his right to have sufficient time to advise with counsel and prepare his defense." Then, quoting a Pennsylvania case with approval, Justice Sutherland declared: " 'It is vain to give the accused a day in court, with no opportunity to prepare for it, or to guarantee him counsel without giving the latter any opportunity to acquaint himself with the facts or law of the case. * * *' " *Id.* at 59.

We feel that, under the circumstances of the instant cause, a finding of presumed prejudice to the appellant is justified.

counsel in a similar vein, actually berating the jurors for their guilty verdict and repeatedly urging them to "reconsider the evidence." These statements were not only pointless at that stage, but almost certainly prejudiced appellant by making the jurors feel that their integrity was being impugned. Given that appellant's attorneys had a particular duty to render meaningful assistance to appellant, their failure to investigate appellant's background to obtain mitigating evidence, combined with the inept presentation of pointless and provocative statements by both appellant and counsel to the jury, compels us to conclude that appellant was deprived of the effective assistance of his counsel at the penalty phase of this proceeding.

Furthermore, it is well recognized that a duty rests on the trial court, as well as on the defendant's counsel, to take special care to see that an accused's rights are properly protected. *Powell* v. *Alabama* (1932), 287 U.S. 45. The lesson of *Powell* is that a trial judge must exercise extreme caution to ensure that full justice is accorded to the accused and that defense counsel is not unfairly handicapped in his presentation of defendant's case to the jury. Under the circumstances of this case, we believe that the trial court erred in setting the sentencing hearing too soon after appellant's conviction of aggravated murder with specifications.

The record reflects that the trial judge had been advised by counsel for appellant that there was a complete lack of preparation on the part of defense counsel for the penalty phase. R.C. 2929.024 requires the court to provide the services necessary for effective representation at the sentencing stage of an aggravated murder case. The statutory scheme is effectuated further by R.C. 2929.03(D)(1) which provides that "[t]he defendant shall be given great latitude in the presentation of evidence of the mitigating factors set forth in division (B) of section 2929.04 of the Revised Code and of any other factors in mitigation of the imposition of the sentence of death. * * *" These statutes implicitly require a reasonable time to prepare for the presentation of mitigating evidence. In our view, appellant was deprived of meaningful assistance of counsel at this critical stage of the proceeding. It is a vain act to give the accused a sentencing hearing with no opportunity to prepare for it, or to guarantee him counsel without giving such counsel a reasonable opportunity to explore and investigate potential mitigating factors.

We hasten to add that the mere failure to present mitigating evidence at the penalty phase of a capital trial does not itself constitute proof of ineffective assistance of counsel or deprivation of the accused's right to a fair trial. It is conceivable that the omission of such evidence in an appropriate case could be in response to the demands of the accused or the result of a tactical, informed decision by counsel, completely consonant with his duties to represent the accused effectively. The totality of the circumstances herein, however, forces us to conclude that the instant cause

illustrates the utter lack of informed, calculated decision-making on the part of counsel in the penalty phase of appellant's capital trial.[5]

We are also gravely concerned with the failure of counsel to object to the inclusion in the indictment, and the submission to the jury at both the guilt and penalty stage, of specification number two, alleging that appellant "had a firearm on or about his person or under his control * * *." This specification is not among the aggravating circumstances enumerated by the General Assembly in R.C. 2929.04(A).[6] R.C. 2941.14

---

[5] Our conclusion that the absence of mitigating evidence was not the result of an informed, tactical decision on the part of counsel is buttressed by the record in this case. For example, the record discloses the following potentially mitigating circumstances:

(1) appellant's family was close-knit and highly supportive of one another;

(2) appellant's psychiatric examination indicated no emotional or mental problems;

(3) appellant graduated from high school, attended a trade school, worked for seven years in a foundry, and at one time owned his own home;

(4) appellant was married and has a young daughter;

(5) appellant had experienced difficulty with drug abuse which he has apparently conquered;

(6) appellant lost an eye at the age of ten, spent months in the hospital, and was consequently denied promotion to the next grade;

(7) appellant's mother was a nurse at St. Luke's Hospital before her death from cancer a year before appellant's trial; and

(8) appellant turned himself in voluntarily to the police when he learned of the warrant for his arrest.

All of these circumstances would be relevant in mitigation. Yet absolutely no evidence on these factors was presented to the jury. This, combined with the statements by counsel indicating their failure to prepare for the penalty phase, strongly indicates that the complete absence of mitigating evidence did not result from a considered strategic judgment on the part of counsel.

[6] The aggravating circumstances listed in R.C. 2929.04(A) are as follows:

"(1) The offense was the assassination of the president of the United States or person in line of succession to the presidency, or of the governor or lieutenant governor of this state, or of the president-elect or vice president-elect of the United States, or of the governor-elect or lieutenant governor-elect of this state, or of a candidate for any of the foregoing offices. For purposes of this division, a person is a candidate if he has been nominated for election according to law, or if he has filed a petition or petitions according to law to have his name placed on the ballot in a primary or general election, or if he campaigns as a write-in candidate in a primary or general election.

"(2) The offense was committed for hire.

"(3) The offense was committed for the purpose of escaping detection, apprehension, trial, or punishment for another offense committed by the offender.

"(4) The offense was committed while the offender was a prisoner in a detention facility as defined in section 2921.01 of the Revised Code.

"(5) Prior to the offense at bar, the offender was convicted of an offense an essential element of which was the purposeful killing of or attempt to kill another, or the offense at bar was part of a course of conduct involving the purposeful killing of or attempt to kill two or more persons by the offender.

"(6) The victim of the offense was a peace officer, as defined in section 2935.01 of the Revised Code, whom the offender had reasonable cause to know or knew to be such, and either the victim, at the time of the commission of the offense, was engaged in his duties, or it was the offender's specific purpose to kill a peace officer.

(B), pertaining to allegations to be included in an aggravated murder indictment, states:

"Imposition of the death penalty for aggravated murder is precluded unless the indictment or count in the indictment charging the offense specifies one or more of the aggravating circumstances listed in division (A) of section 2929.04 of the Revised Code."

R.C. 2901.04(A) mandates that "[s]ections of the Revised Code defining offenses or penalties shall be strictly construed against the state, and liberally construed in favor of the accused." Viewed in this light, R.C. 2941.14(B) limits the aggravating circumstances which may be considered in imposing the death penalty to those specifically enumerated in R.C. 2929.04(A).

This conclusion was at least implicitly recognized by this court in *State v. Jenkins* (1984), 15 Ohio St. 3d 164, certiorari denied (1985), ____ U.S. ____, 87 L. Ed. 2d 643. This court observed at 207:

"The statutory framework in Florida discussed in *Barclay* [v. *Florida* (1983), 463 U.S. 939] is similar to Ohio's. *Like in Ohio, the statute precluded consideration of non-statutory aggravating circumstances * * *.*" (Emphasis added.)

Indeed, the Eighth and Fourteenth Amendments to the United States Constitution would appear to preclude the inclusion of non-statutory aggravating specifications. Pursuant to *Furman* v. *Georgia* (1972), 408 U.S. 238, and its progeny, the United States Supreme Court has directed that jury discretion in capital sentencing be sufficiently guided so as to avoid the arbitrary and selective imposition of the death penalty. In *State* v. *Jenkins, supra,* at 196, a California decision was discussed and quoted:

" 'The use in the penalty phase of both these special circumstance allegations thus artificially inflates the particular circumstances of the crime and strays from the high court's mandate that the state "tailor and apply its law in a manner that avoids the arbitrary and capricious infliction of the death penalty." (*Godfrey* v. *Georgia* [1980], 446 U.S. 420 at p. 428. * * *) The United States Supreme Court requires that the capital-sentencing procedure must be one that "guides and focuses the jury's objective consideration of the particularized circumstances of the individual offense and the individual offender before it can impose a sentence of

---

"(7) The offense was committed while the offender was committing, attempting to commit, or fleeing immediately after committing or attempting to commit kidnapping, rape, aggravated arson, aggravated robbery, or aggravated burglary, and either the offender was the principal offender in the commission of the aggravated murder or, if not the principal offender, committed the aggravated murder with prior calculation and design.

"(8) The victim of the aggravated murder was a witness to an offense who was purposely killed to prevent his testimony in any criminal proceeding and the aggravated murder was not committed during the commission, attempted commission, or flight immediately after the commission or attempted commission of the offense to which the victim was a witness, or the victim of the aggravated murder was a witness to an offense and was purposely killed in retaliation for his testimony in any criminal proceeding."

death." (*Jurek* v. *Texas* [1976], 428 U.S. 262, at pp. 273-274 * * *.) That requirement is not met in a system where the jury considers the same act or an indivisible course of conduct to be more than one special circumstance.' " *Jenkins, supra,* quoting *People* v. *Harris* (1984), 36 Cal. 3d 36, 201 Cal. Rptr. 782, 798, 679 P. 2d 433, 449. The inclusion of a nonstatutory aggravating factor creates a situation where a jury can deviate from the guidance provided by statute. The result may be an "arbitrary and capricious infliction of the death penalty" contrary to the dictates of *Godfrey, supra.*

The inescapable conclusion is that it was error to submit the nonstatutory aggravating factor to the jury for its consideration in the penalty phase of the trial. Because the penalty of death is "qualitatively different from a sentence of imprisonment, however long[,] * * * there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case." *Woodson* v. *North Carolina* (1976), 428 U.S. 280, 305. Presenting the jury with specifications not permitted by statute impermissibly tips the scales in favor of death, and essentially undermines the required reliability in the jury's determination.

Under the facts at bar, the failure of appellant's attorneys to object to the submission to the jury of a non-statutory aggravating factor in the penalty phase of a capital trial constitutes ineffective assistance of counsel according to the principles discussed *supra.* Where absolutely no evidence in mitigation is offered by the defense, and no attempt is made to prevent the cumulation of impermissible aggravating factors, the defendant is exposed to an inexcusably heightened probability of receiving a sentence of death. We cannot characterize this total abandonment of appellant's defense at such a critical stage as even approaching the effective assistance of counsel. Appellant's sentence of death is therefore vacated.

We now turn to a consideration of whether the trial court's denial of defense counsel's request for a continuance at the guilt phase of the proceeding constituted reversible error. For the following reasons, we find that it does, and we accordingly reverse appellant's convictions.

In making this motion for a continuance, defense counsel stated to the court that certain newly discovered material evidence had come to light that defense counsel had not had an opportunity to evaluate or investigate. This evidence involved the presence of other, unidentified persons in the small hotel at the time of the murder, who had not been stopped or questioned by police. Defense counsel requested a one-week continuance to investigate this new evidence. In overruling this motion, the trial court noted that the state's case is "largely, if not entirely, circumstantial," and that in view of defense counsel's expertise and experience in criminal cases, he could not see any compelling reason for granting a continuance at that time.

However, this court is convinced that the trial court's refusal to grant a continuance deprived appellant of a fair trial. As the trial judge

acknowledged, the evidence offered by the prosecution was almost entirely circumstantial. In such cases, the court should utilize the utmost care to ensure that a defendant is afforded every opportunity to demonstrate that such evidence is consistent with a theory of innocence. This is particularly true where a penalty of death is a possibility. Thorough investigation of all pertinent facts is crucial in a case such as the one at bar where a theory of innocence is supported by numerous facts.[7] The refusal of the trial court to allow appellant's attorneys time to investigate the possibly vital facts surrounding the presence of two unidentified, unquestioned persons at the hotel at the time of the murder substantially prejudiced appellant's ability to present a complete defense, and deprived him of the effective assistance of his counsel.

In *State* v. *Price* (1973), 34 Ohio St. 2d 43 [63 O.O.2d 82], this court held that a denial of a continuance is not an abuse of discretion where movant's counsel asserts to the court that he is in fact prepared for trial. Here, appellant's counsel protested to the court that they were not prepared to go forward because of the lack of time to complete the investigations, and that without a continuance they could not provide their client with effective assistance in his defense. Although a motion for a continuance is addressed to the sound discretion of the trial court, *State* v. *Unger* (1981), 67 Ohio St. 2d 65 [21 O.O.3d 41], we find that under these circumstances the ends of justice required that appellant be granted additional time to pursue this potentially crucial evidence. See R.C. 2945.02. We therefore conclude that the trial court abused its discretion in refusing to grant the requested continuance.

In conclusion, based on the foregoing reasons, appellant's convictions are reversed, and the sentence of death is vacated. The cause is hereby remanded to the trial court for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

CELEBREZZE, C.J., SWEENEY and LOCHER, JJ., concur.

CELEBREZZE, C.J., concurs separately.

WRIGHT, J., concurs in part and dissents in part.

HOLMES and DOUGLAS, JJ., dissent.

---

[7] For example, no fingerprints of appellant were found on the cash box, emptied during the robbery, or on the front doors of the Reno Hotel through which appellant supposedly escaped after committing the robbery and murder. No witness testified that appellant wore gloves that day. Not a trace of blood was found on the coat appellant was wearing at the time, although the victim had been shot five times at close range. Dirt particles found on the victim's body and on appellant's coat were found to be inconsistent. The murder weapon was never found. There is virtually no physical evidence which placed appellant inside the hotel on the day Eunice Graster was murdered therein.

CELEBREZZE, C.J., concurring. Justice Brown's majority opinion carefully focuses on the critical issue before us for review — the conduct of appellant's defense counsel in the case *sub judice*. I concur in his analysis of the relevant law and support the conclusion that appellant was denied the fundamental right to the effective assistance of counsel.

Appellant's central claim is based on the denial of the effective assistance of counsel in the penalty phase of his capital trial. This same issue was before the United States Supreme Court in *Strickland* v. *Washington* (1984), 466 U.S. 668. In *Strickland,* the defendant pleaded guilty to three capital murder charges. The only evidence presented in mitigation at the sentencing hearing was a plea for mercy from counsel stressing the defendant's willingness to accept responsibility for the crimes and his remorse. The trial judge found that the aggravating circumstances outweighed the mitigating factors and sentenced the defendant to die.

Defendant subsequently sought habeas corpus relief, claiming that counsel had rendered ineffective assistance at the sentencing proceeding. The Supreme Court found this claim to be without merit. The record before the court showed that, in preparation for sentencing, counsel had conferred with the defendant, his wife and his mother about the defendant's background. Counsel decided on the basis of those conversations not to request a psychiatric report for two reasons: first, there was no indication that defendant had psychological problems and second, counsel did not wish to give the state the opportunity to put on psychiatric evidence of its own. Counsel also decided not to request a presentence report in order to avoid mentioning defendant's prior criminal history. Counsel formulated a strategy for his argument which highlighted defendant's remorse and acceptance of responsibility based on the trial judge's reputation as one who responded favorably to defendants who "owned up" to their crimes. After considerable investigation and thought, counsel determined to forego other evidence in mitigation in the belief that his argument would provide the best chance to spare the defendant's life. *Id.* at 673. The Supreme Court found ample evidence that counsel had fulfilled his duty to make reasonable investigation or to make a reasonable decision that a particular investigation was not necessary:

"On these facts, there can be little question, even without application of the presumption of adequate performance, that trial counsel's defense, though unsuccessful, was the result of reasonable professional judgment." *Id.* at 699.

The performance of Strickland's counsel is in clear contrast to the case *sub judice.* There is a complete lack of evidence in the record before us that counsel's conduct of the penalty phase of appellant's trial was the result of any reasonable professional *judgment.* The insinuation that counsel's failure to present any evidence in mitigation was a strategic decision reached after some reasonable deliberation and investigation is simply

misguided. Any conjecture that counsel must have tactically considered and rejected the presentation of character witnesses in the penalty phase of this trial, based solely on the fact that counsel and appellant were personal acquaintenances, is pure speculation which has no place in the review of a capital case.

There is no evidence in this case, as in *Strickland,* that appellant's counsel investigated the possibility of presenting the results of a psychological examination or a presentence report in mitigation. There is no evidence here, as in *Strickland,* that counsel investigated the members of appellant's family and others as potential witnesses in mitigation. There is no evidence in the case *sub judice,* as in *Strickland,* that counsel conferred at length with appellant and apprised him of the nature of the evidence to be presented in the penalty phase of his trial. Instead, there is evidence in the record before us that appellant's counsel had not made reasonable preparation or investigation for the mitigation hearing. When the trial court asked if counsel had any requests prior to commencement of the penalty phase, appellant's counsel, Farris Williams, informed the court that he had *not even discussed the mitigation presentation with appellant and then requested just ten minutes* to do so.

The result of this lack of reasonable preparation and investigation on the part of appellant's counsel was that no evidence in mitigation was offered. Rather, appellant's counsel, Fred Middleton, allowed his own and appellant's presentations in mitigation to degenerate into a rambling denunciation of the jury for its finding of guilt. The remarks of both appellant and his counsel demonstrate that counsel was entirely unprepared for, and indeed misunderstood, the nature of the penalty phase of this trial. As in *Powell* v. *Alabama* (1932), 287 U.S. 45, counsel's lack of preparation and investigation so tainted the criminal process in the case *sub judice* that prejudice to appellant can be presumed. See, also, *United States* v. *Cronic* (1984), 466 U.S. 648; *Kemp* v. *Blake* (C.A. 11, 1985), 758 F. 2d 523, certiorari denied (1985), ___ U.S. ___, 88 L. Ed. 2d 367.[8]

As the majority also aptly illustrates, counsel's conduct at the penalty phase of appellant's trial was not the only instance of failure to render ef-

---

[8] In this writer's opinion, it would be a rare case where presentation of mitigation evidence, no matter how meager, would be inappropriate. For example, assuming *arguendo* that appellant had demonstrated a spirit of cooperation with authorities during his pretrial incarceration, this fact would have been appropriate for consideration by the jury during the penalty phase.

The United States Supreme Court recognized the importance of such evidence in *Skipper* v. *South Carolina* (1986), ___ U.S. ___, 90 L.Ed. 2d 1. In *Skipper* the court reversed the trial court's exclusion from the sentencing phase of a capital trial defendant's proffer of testimony from two of his jailers and a "regular visitor" to the effect that defendant had "made a good adjustment" to jail life while awaiting trial. The high court stated that "a defendant's disposition to make a well-behaved and peaceful adjustment to life in prison is itself an aspect of his character that is by its nature relevant to the sentencing determination." *Id.* at 8.

fective assistance. Even the state acknowledges that the firearm specification should not have been submitted to the jury as an aggravating circumstance. Yet, appellant's counsel failed to recognize the error and to object to it at the three most critical stages of this prosecution: indictment, guilt phase of trial, and penalty phase.

Finally, I join in the conclusion that the trial court's failure to grant the pretrial continuance requested by appellant's attorneys was an abuse of discretion. We recognize that at some point trial dates must be set and held. It must be taken into consideration, however, that the attorneys moved for a continuance of only one week. In this regard, Justice Sutherland's observations in *Powell* v. *Alabama, supra,* are particularly appropriate:

"It is true that great and inexcusable delay in the enforcement of our criminal law is one of the grave evils of our time. * * * The prompt disposition of criminal cases is to be commended and encouraged. But in reaching that result a defendant, charged with a serious crime, must not be stripped of his right to have sufficient time to * * * prepare his defense." *Id.* at 59.

It may be, as the state asserted, that appellant's counsel could have learned of the presence of two registered guests at the hotel prior to the request for continuance. Nevertheless, it is clear from the record that counsel were not made aware of this "newly discovered evidence" and, upon discovery, considered themselves ill-prepared without further investigation. The requested continuance of one week was not unreasonable even if due in part to some alleged lack of diligence on the part of counsel. Appellant's guilt or innocence was at issue, not the efficiency of appellant's attorneys or the prosecution.

In summary, I too am aware of the admonition of the United States Supreme Court that "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland, supra,* at 689. I adhere to this position lest we face a proliferation of ineffectiveness claims in which "[c]riminal trials resolved unfavorably to the defendant would increasingly come to be followed by a second trial, this one of counsel's unsuccessful defense." *Id.* at 690.

In the case *sub judice,* however, the instances of counsel's ineffectiveness are so compelling that I must agree in this instance that "it is unfair to hang the client because of the fault of the attorney * * *." *Commonwealth* v. *Bell* (1965), 417 Pa. 291, 297, 208 A. 2d 465, 469, Musmanno, J., dissenting.

For the foregoing reasons I respectfully concur.

WRIGHT, J., concurring in part and dissenting in part. I concur in Justice Douglas' well-reasoned dissent from the majority's reversal of appellant's conviction. However, under the circumstances disclosed I think the trial court's failure to provide counsel reasonable time and opportunity to prepare and present evidence in mitigation of the imposition of the

death sentence was a clear denial of due process. The absence of any mitigation evidence under the circumstances of this case suggests that Johnson was deprived of the effective assistance of counsel at a critical stage of the trial proceedings.

The majority opinion states with clarity that the presentation of little or no evidence in mitigation does *not* in and of itself constitute ineffective assistance of counsel. Justice Douglas resolutely argues that counsel for appellant made a reasoned decision to follow such a course. I find such a conclusion difficult to accept given the time frame of the guilty finding, lack of consultation with appellant, the appellant's background, and the timing of the mitigation hearing.

I would limit our holding to a finding that the trial court committed reversible error in failing to protect appellant's constitutional right to a fair trial and effective assistance of counsel. A duty rests on the court to see that an accused's rights are upheld. *Powell* v. *Alabama* (1932), 287 U.S. 45. The Fifth Circuit Court of Appeals addressed this issue directly in *United States, ex rel. Reis,* v. *Wainwright* (C.A. 5, 1976), 525 F. 2d 1269, when it stated at 1273:

"* * * [T]he right to effective assistance of counsel is safeguarded both by the due process clause of the Fourteenth Amendment standing alone and by the Sixth Amendment guarantee of effective representation (applied to the states through the Fourteenth Amendment). When defense counsel's representation is so blatantly incompetent as to render the whole proceeding fundamentally unfair, the due process clause itself is violated. When, however, the aggregate of retained counsel's alleged errors does not rise (or sink) to the level of fundamental unfairness, in order to support a finding of a Sixth Amendment violation there must be a showing that the state was somehow involved in the ineffective representation:

" 'To find state involvement in retained counsel's conduct which is adjudged to be less than reasonably effective, yet not so grossly deficient as to render the proceedings fundamentally unfair, it must be shown that some responsible state official connected with the criminal proceeding who could have remedied the conduct failed in his duty to accord justice to the accused. That the trial judge and the prosecutor have such a capacity and duty is unquestionable. Therefore, if the trial judge or the prosecutor can be shown to have actually known that a particular defendant is receiving incompetent representation and takes no remedial action, the state action requirement is satisfied. * * *' "

The constitutional guarantee of effective assistance of counsel is generally taken to mean such assistance that the rights of the accused are properly safeguarded and his defense is competently and zealously presented. *Johnson* v. *Zerbst* (1938), 304 U.S. 458. If an attorney's performance in representing an accused is such as to amount to no representation at all, the accused has clearly been deprived of effective representation. *United States* v. *Williams* (C.A. 9, 1972), 455 F. 2d 361, certiorari

denied (1972), 409 U.S. 857. The court has a duty to insure that the defendant in a criminal proceeding has the effective assistance of counsel. *Powell* v. *Alabama, supra; Ponzi* v. *Fessenden* (1922), 258 U.S. 254.

Although a trial court has very broad discretion in the procedural conduct of a trial and due process requirements may vary with the circumstances, it is essential that defense counsel in a criminal case be afforded a reasonable opportunity to prepare his case. In the instant case the preparation time for the sentencing hearing was obviously inadequate.

The trial judge had a duty to insure that appellant's rights were protected. I am painfully aware that, after conviction, counsel could make a most dangerous tactical decision and present nothing in mitigation. However, the trial court, when confronted with the peculiar circumstances at bar, had an obligation to give counsel for appellant adequate time to investigate and prepare evidence in mitigation or, at the very least, to make a record of counsel's reasons for his actions in defending his client. This standard would fulfill the mandate contained in R.C. 2929.03(D)(1). The trial court's failure to follow this procedure was reversible error.

Thus, I would affirm in part and reverse in part and remand this cause to the trial court for resentencing pursuant to R.C. 2929.06.

DOUGLAS, J., dissenting. I must respectfully dissent from the opinion of the majority.

Initially, I think it is important to set forth the facts and circumstances, conspicuously absent from the majority opinion, which led to the arrest and subsequent conviction of appellant.

The Reno Hotel, where the victim was murdered, serves primarily as a rendezvous point for prostitutes and their customers and those involved in illicit love affairs. Other than the owner, his family or hotel workers, only couples are permitted admittance to the hotel. It is not possible to enter the building unless "buzzed in" by the clerk. The hotel parking lot is situated to the side of the building, and the main entrance, used by patrons, is located on that same side. The double doors on the front of the hotel facing the street are not used and are kept locked.

On the day she was murdered, Eunice Graster was scheduled to work from 7:00 a.m. until 3:00 p.m. At about 9:25 a.m. that day, the victim's husband and two children stopped by the hotel on the way to a 10:00 a.m. appointment at the office of the W.I.C. program, a program funded by the federal government to supply nutritional foods to people who have nutritional or physical needs. Mr. Graster and the children visited for about fifteen minutes, during which visit, appellant was "buzzed" into the front door by the victim. Mrs. Graster admitted appellant to the hotel although he was unescorted, saying, "Here comes Gary." Appellant went into a nearby room and Mr. Graster and the children left.

Upon his timely arrival at the W.I.C. office, Mr. Graster realized he did not have an identification card and attempted to call his wife at the

hotel. He received no answer. Mr. Graster was informed by W.I.C. officials that the card was unnecessary, but because he had not been able to reach his wife, he tried calling her again. This second effort was also unsuccessful as was a third call, attempted after Mr. Graster returned home.

Appellant's aunt, Vera Lundy, a maid at the hotel, arrived for work at a few minutes past 10:00 a.m. on the day of the murder. She tried to get into the hotel at the main entrance, but no one was in the office to permit her entry. After pounding on the door and shouting for Mrs. Graster, Lundy went to the back door and attempted to get in. There, too, she was unsuccessful. Lundy walked to the front of the hotel where she saw the front doors unbolted and standing open. Appellant was coming down the front steps. Lundy testified that she asked appellant if he had been in the hotel and that he answered, "No." When she asked appellant to go inside the hotel with her to help her find Mrs. Graster, appellant refused saying that he did not want to be blamed "for nothing that happened in that hotel."

On the morning of the murder, an unmarked police car was parked outside the hotel. Inside the vehicle were three police detectives; there also was a prostitute who had been arrested that morning. Two of the officers testified at the trial that the hotel was under surveillance. During this watch, both officers testified that they observed appellant coming across the front lawn of the hotel with a yellow envelope in his hand. The envelope was the kind in which the hotel's cash receipts were kept. The police observed appellant's brief conversation with Lundy, and watched appellant walk away. Shortly after, the police officers left the scene.

The conversation between appellant and Lundy was also observed by John Williams, a paver hired to resurface the hotel parking lot. Williams testified that he saw appellant walking along the sidewalk but saw nothing in his hand. Other witnesses testified as to appellant's whereabouts, activities, actions and conversations on the day of the murder.

Shortly after the murder, a warrant was issued for appellant's arrest. Appellant was charged with aggravated murder with specifications that the aggravated murder was committed while appellant was committing or attempting to commit or fleeing immediately after committing or attempting to commit aggravated robbery and that during the course of committing these crimes, appellant had a firearm on or about his person or under his control, all in violation of R.C. 2903.01, 2929.04 and 2929.71. Appellant, in a second count, was also charged with aggravated robbery, a violation of R.C. 2911.01. On May 3, 1983, appellant, having learned of the warrant, turned himself in to the police. After trial, the jury, on October 13, 1983, returned its verdict of guilty on all counts.

Initially it must be noted that appellant himself has never taken direct exception to his conviction and sentence based upon the nature or sufficiency of the evidence. Appellant presents to this court eight propositions of law—none of which raises the question as to the weight or sufficiency of

the evidence. Proposition of Law No. I deals with ineffective assistance of counsel in the penalty stage. Proposition No. II relates to the propriety (or impropriety) of the trial judge in submitting to the jury an offense, as an aggravating circumstance, that is not among those offenses listed in Ohio's capital offense law. Proposition No. III deals with the prosecutor's argument in the penalty stage. Proposition No. IV deals with the charge of the trial court during the sentencing phase. Proposition No. V raises a constitutional question as to meaningful review of the appropriateness of the sentence of death. Proposition No. VI concerns the court's instruction in the penalty stage. Proposition No. VII deals with the same issue raised in Proposition No. II. Proposition No. VIII questions the constitutionality of the law on the basis that it creates "a mandatory sentencing factor." Thus, none of the issues presented to us by appellant questions the quantity or quality of the evidence presented against him at trial.

Additionally, pursuant to statute and as a matter of general policy, this court's review in criminal cases does not include a reweighing of the evidence.[9] However, in reaching its decision, the majority has undertaken a reweighing of the evidence, and in light of its circumstantial nature has decided to give the appellant a second bite at the apple. Relying, in part, upon appellant's misapplications of the law relevant to this case,[10] the ma-

---

[9] R.C. 2953.02 reads in part:

"⁺ * * The supreme court in criminal cases shall not be required to determine as to the weight of the evidence, except as provided in section 2929.05 of the Revised Code."

See, also, 27 Ohio Jurisprudence 3d (1981) 868-869, Criminal Law, Section 1536, and the cases cited therein.

In addition, as recently as March 19, 1986 in *State* v. *Jackson* (1986), 22 Ohio St. 3d 281, 285, in a *per curiam* opinion, the majority found that "[t]he weight to be given evidence and the credibility of the witnesses are primarily decisions for the jury" and cited for this proposition, with approval, *State* v. *DeHass* (1967), 10 Ohio St. 2d 230 [39 O.O.2d 366]. It appears to be fair to ask what motivates this sudden change.

[10] In support of his claim of ineffective assistance of counsel, appellant relies upon the following factually dissimilar cases cited in the majority opinion: *King* v. *Strickland* (C.A. 11, 1983), 714 F. 2d 1481; *United States* v. *Cronic* (1984), 466 U.S. 648; and *Pickens* v. *Lockhart* (C.A. 8, 1983), 714 F. 2d 1455.

The *King* court, citing *Stanley* v. *Zant* (C.A. 11, 1983), 697 F. 2d 955, 963, noted that the Supreme Court has never held counsel ineffective in a capital case solely because of failure to present mitigating evidence. The *King* court ruled that the defendant was denied ineffective assistance of counsel when counsel failed to present *available* mitigation evidence *in combination with* a closing argument which "stressed the horror of the crime and counsel's status as an appointed representative." The court ruled that the latter error, in effect, separated counsel from his client and conveyed to the jury that counsel had reluctantly represented a client who had committed a reprehensible crime.

In *Cronic, supra,* the Supreme Court, in remanding the case to the court of appeals, found that where the surrounding circumstances do not demonstrate that counsel fails to function *in any meaningful sense* as an adversary, the defendant could not sustain a Sixth Amendment claim of ineffective assistance of counsel without pointing out specific errors by his counsel. In the case before us, in denying defense counsel's request to withdraw from this case, the trial judge stated:

jority has acquiesced to appellant's protests of "ineffective assistance of counsel." Regrettably, the majority has failed to consider that despite the nature of the evidence, it weaves a web around appellant which includes motive, opportunity and an insider's familiarity with the layout and operation of the hotel. While the evidence was circumstantial in nature, both the jury and the trial judge saw all of it, heard all the testimony and witnessed the demeanor of all the persons present and testifying at the trial. Despite the nature of the evidence, it was sufficient to convince both the jury and the judge, in their separate and independent reviews, that appellant was guilty as charged. However unsettling it may be to uphold a conviction and death penalty based upon circumstantial evidence, there is simply no sound legal basis upon which to overrule both the trial and appellate courts' decisions.

The majority focuses first upon what it characterizes as a *"failure* of defense counsel to conduct any investigation into appellant's background for purposes of obtaining evidence in mitigation, and their [presumably] resulting failure to present any such evidence at the penalty stage of the proceeding." (Emphasis added.) Stated another way, appellant maintains,

---

"The defendant is represented by Fred Middleton, whose work is well known to the Court and a former Assistant County Prosecutor and a thorough seasoned trial lawyer, and Mr. Farris Williams, whose work is not known to the Court until recently, *but who was chosen to* replace Mr. DeFranco *at the direct request of the defendant* * * *.

"At that point the defendant informed the Court that he had confidence in Mr. Williams and his ability and trustworthiness and on the basis of that, the Court did appoint him and his appearances in the court the last few weeks have tended to bear that out. *He has appeared prepared, knowledgeable, articulate, and obviously with the best interests of his client in mind at all times."* (Emphasis added.)

The *Cronic* court also noted that every refusal to postpone a criminal trial will not give rise to an assumption that counsel's assistance was ineffective.

In *Pickens, supra,* at 1467, the court of appeals *specifically found that there were no facts in the record* which indicated that defense counsel made a tactical decision not to present a case in mitigation but rather it appeared "much more likely that he abdicated all responsibility for defending his client in the sentencing phase."

In the case before this court, as noted by the majority, defense counsel stated:

"I would request that maybe I can have ten minutes or so with the defendant to explain to him what our *position is* and *what we anticipate* happening with the mitigation hearing and we would like for him to consider *what action we would like for him to take."* (Emphasis added.)

The majority interprets these remarks to mean that defense counsel was unprepared to present a case in mitigation, and could only have become prepared by conducting investigations at this point in the trial. It is just as likely that in light of the information gathered via the pretrial motions, the psychiatric evaluation, as well as the longstanding relationship existing between one of the attorneys and the appellant, that counsel and client had established a *position* in the eventuality of a guilty verdict, and that all that was needed was "ten minutes" to review that position. Additionally, it seems unlikely that counsel, who showed no reluctance to file numerous motions, and to request several continuances, would be unprepared at this point. If counsel thought they needed more time to collect information or for preparation, it seems highly unlikely, given counsel's aggressive advocacy style throughout the trial, that they would not at least have requested more time than they did.

and the majority accepts, the proposition that the fact no mitigating evidence was presented to the jury *demonstrates* that appellant's counsel failed to investigate or prepare for the mitigation phase of this trial. The majority's discussion of this issue suggests that when the penalty phase of a capital case occurs very shortly after the guilt phase, and wherein no mitigating evidence is presented, prima facie a scenario is presented which depicts "* * * [a] complete lack of preparation and zeal on the part of defense counsel regarding the question of whether their client should live or die, [and] *compels the conclusion that* * * * [an] appellant * * * [is thereby] deprived of any effective, meaningful assistance from his counsel at this obviously critical stage of the proceedings." (Emphasis added.)

The Supreme Court, in *Strickland* v. *Washington* (1984), 466 U.S. 668, 687, set forth the current two-part test for effective assistance of counsel,[11] and among other things, defined counsel's duty to prepare and conduct investigations for trial. As noted by the majority, the Supreme Court stated that the duty of defense counsel is:

"* * * [T]o make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* at 691.

However, the majority herein conveniently omits the further teachings of the *Strickland* court wherein the court also stated:

"* * * In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.*

"* * * [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have

---

[11] In *Strickland*.v. *Washington* (1984), 466 U.S. 668, the court held that:

"* * * In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. * * * [*Id.* at 688.]

"* * *

"* * * The defendant [in addition] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Id.* at 694.)

rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

Thus, in light of *Strickland, supra,* the equation drawn by the majority, to wit: no mitigating evidence equates to ineffective assistance, is impermissible without a careful look at the facts and circumstances in the case *sub judice* against which an assessment of the reasonableness of counsel's "failure" must be viewed.

Defendant was indicted on May 4, 1983. He did not come to trial until October 3, 1983, some five months later. As part of the pretrial process, the trial court appointed counsel; appointed an investigator at state expense; granted appellant's motion for a competency examination pursuant to R.C. 2945.37, 2945.371 and 2945.39; granted appellant's requests for change of counsel and appointed a new attorney of record *specifically chosen by appellant*; and ruled upon at least six other motions including appellant's motion for discovery of any exculpatory and *mitigatory* material pursuant to Crim. R. 16. Appellant's Crim. R. 16 motion, filed May 17, 1983, specifically requested that the prosecutor provide:

"All evidence known, or which may become known, to the prosecuting attorney, favorable to the defendant and *material either to guilt or punishment* * * *." (Emphasis added.)

In effect, this means that prior to trial, defense counsel must be presumed to have had in their possession background and trial information obtained from an investigator, a psychiatric report, the prosecutor, the defendant and members of the defendant's family who were also clients of attorney Farris Williams. To state then, as does the majority, that defense counsel gathered no evidence to present in mitigation, is clearly inaccurate. There is certainly no requirement that the collection of mitigatory evidence take place only after the guilt phase of the trial. On the contrary, it seems more likely that a well-prepared attorney would provide for the eventuality of a guilty verdict even as the guilt phase of the trial is in progress. Additionally, in this case, the *Strickland* court's analysis at 691 is particularly enlightening. The court stated:

"The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. * * * [W]hen the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. * * *"

Likewise, counsel's knowledge of the background and history of the defendant, as it relates to the guilt or sentencing phase of the trial, influences counsel's decisions regarding when, whether or what investigations are needed. In a letter written to the trial judge requesting appointment of new counsel, appellant stated:

"This Letter Is to my judge asking that you change my Lawer whom i no longer want to handle my case for many reason this case is so impor-

tant i need to have some one i feel is going to do the best job he can for me. Some one *who knows me* and belives in me and this person i trust with my Life is Farris Williams * * * *he has been my lawer for over four years* and he will take my case if he is allowed to do so * * *."[12] (Emphasis added.)

A quite reasonable assumption based on appellant's letter is that attorney Williams was very familiar with appellant's background and could make an informed decision as to whether there was relevant or helpful evidence to present in mitigation.

Appellant failed to inform this court about what mitigation evidence could have been presented and was not, and the facts point more clearly to the possibility that defense counsel simply thought that the best strategy was to proceed as they did, with only appellant's unsworn statement. Perhaps this was not the best strategy, but as noted by the *Strickland* court at 689:

"* * * A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' * * *" (Citation omitted.) See, also, *State* v. *Clayton* (1980), 62 Ohio St. 2d 45, 49 [16 O.O.3d 35], where this court, quoting *State* v. *Lytle* (1976), 48 Ohio St. 2d 391, 396 [2 O.O.3d 495], stated:

" 'We deem it misleading to decide an issue of competency by using, as a measuring rod, only those criteria defined as the best available practices in the defense field.' " (Emphasis deleted.)

In summary, the facts simply do not support the majority's holding that defense counsel's failure to conduct other investigations, specifically just prior to the sentencing trial, and their failure to present mitigation testimony other than appellant's statement, *per se* constitute ineffective assistance of counsel.

The majority next accepts appellant's contention that he was denied a fair trial when his counsel failed to object to, or prevent the submission to the jury of, a non-statutory aggravating circumstance as a basis for the death penalty.

Appellant is correct in stating that the second specification to count one of the indictment, to wit: "* * * that the offender Gary Johnson had a firearm on or about his person or under his control while committing the offense charged * * *," should not have been submitted to the jury as an

---

[12] A copy of appellant's letter is attached to this opinion as an Appendix. See *infra* at 111.

aggravating factor which subjects the appellant to the death penalty. Clearly, pursuant to R.C. 2929.04, this is not one of the seven enumerated factors.

However, as stated by the appellate court, consideration of a non-statutory aggravating factor does not warrant reversal of the death penalty in this case.

Appellant's reliance on *Zant* v. *Stephens* (1983), 462 U.S. 862, is clearly misplaced. In upholding the death penalty in *Zant,* the Supreme Court stated at 881-883:

"One rule derived from the *Stromberg* [v. *California* (1931), 283 U.S. 359] case is that a general verdict must be set aside if the jury was instructed that it could rely on any of two or more independent grounds, and one of those grounds is insufficient, because the verdict may have rested exclusively on the insufficient ground. * * *

"The second rule derived from the *Stromberg* case is illustrated by *Thomas* v. *Collins,* 323 U.S. 516, 528-529 * * * and *Street* v. *New York,* 394 U.S. 576 * * *.

"The court's opinion in *Street* explained:

" 'We take the rationale of *Thomas* to be that when a single-count indictment or information charges the commission of a crime by virtue of the defendant's having done both a constitutionally protected act and one which may be unprotected, and a guilty verdict ensues without elucidation, there is an unacceptable danger that the trier of fact will have regarded the two acts as "intertwined" and have rested the conviction on both together. * * * *There is no comparable hazard when the indictment or information is in several counts and the conviction is explicitly declared to rest on findings of guilt on certain of these counts, for in such instances there is positive evidence that the trier of fact considered each count on its own merits and separately from the others.'* " (Emphasis added.)

Additionally, the *Zant* court stated at 883, fn. 21:

" '* * * [This] court has held that the single sentence may stand, even if one or more of the counts is invalid, as long as one of the counts is valid and the sentence is within the range authorized by law. See *Claassen* v. *United States,* 142 U.S. 140 (1891); *Pinkerton* v. *United States,* 328 U.S. 640 (1946); *Barenblatt* v. *United States,* 360 U.S. 109 (1959)."

Moreover, appellant's argument is soundly defeated by the Supreme Court's decision in *Barclay* v. *Florida* (1983), 463 U.S. 939. In *Barclay,* the Supreme Court specifically addressed the issue of whether Florida could constitutionally impose the death sentence when one of the aggravating circumstances relied upon in imposing death was not among those established by Florida statute. The Supreme Court affirmed the imposition of death noting first at 956:

" '* * * In this case, as in *Zant* v. *Stephens,* 462 U.S., at 887-888, nothing in the United States Constitution prohibited the trial court from considering * * * [the non-statutory aggravating circumstances]. The trial

judge did not consider any constitutionally protected behavior to be an aggravating circumstance. See *id.* at 884. And, again as in *Zant,* nothing in the Eighth Amendment or in Florida law prohibits the admission of * * * [the non-statutory aggravating circumstance]."

The *Barclay* court, interpreting *Proffitt* v. *Florida* (1976), 428 U.S. 242, then stated at 957, "* * * it is clear that the opinion saw no constitutional defect in a sentence based on both statutory and nonstatutory aggravating circumstances. * * *"

The death penalty statute in Florida is essentially the same as R.C. 2929.04 and the issue addressed in *Barclay* is substantially similar to the issue before this court. In the case *sub judice,* appellant was indicted on two separate counts with count one containing two specifications.

The jury was instructed to consider each count separately and render a verdict as to each. Additionally, the jury was instructed to consider the aggravating circumstances separately and to state its findings as to each "uninfluenced by your decision as to any other specification." The jury did not return a general verdict but returned guilty verdicts as to each count and each specification to count one.

Further, unlike the trial judge in *Barclay,* the trial judge in this case imposed the death penalty only on the basis of the proper aggravating circumstance, after finding beyond a reasonable doubt that it outweighs any mitigating factors. The submission to the jury of a non-statutory aggravating circumstance neither denied appellant a fair trial nor did it violate his right to due process. Therefore, there is no requirement that the death penalty be set aside.

As to whether defense counsel's failure to prevent the submission to the jury of this non-statutory aggravating factor requires this court to reverse the sentence and conviction, the holding in *Strickland, supra,* makes it clear that it does not. The Supreme Court stated at 687:

"A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Unless a defendant makes both showings,* it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." (Emphasis added.)

Even if counsel's error is significant enough to meet the first prong of the *Strickland* test, appellant was not deprived of a fair trial thereby and the second prong of the test is not met.

Turning next to the guilt phase of the trial, the majority "* * * is con-

vinced that the trial court's refusal to grant a [third] continuance deprived appellant of a fair trial." The majority characterizes this refusal as an abuse of discretion because it did not "* * * allow appellant's attorneys time to investigate the *possibly* vital facts surrounding the presence of two unidentified, unquestioned persons at the hotel at the time of the murder * * *." (Emphasis added.) I strongly disagree with the majority and again point out that counsel in this case had five months to prepare for trial. During that time, they were assisted in their investigations by a private investigator. During that time, the trial date was reset three times, each rescheduling providing counsel with additional time. During that time, the state had, in its possession, the hotel registration card which evidenced the presence of the two unidentified guests, and which defense counsel characterized as "new evidence" in their request for a continuance. Again, during that time, defense counsel had the full cooperation of appellant's father, who owned the hotel, who knew of the presence of the two guests in the hotel, and who, in fact, saw this couple check out during the police investigation on the day of the murder.

In opposing defense counsel's motion for continuance on September 26, 1983, the prosecutor stated:

"The State of Ohio has formally responded to the defendant's request for discovery, something that was filed prior to Mr. Williams' [*sic*] entering the case, and the State of Ohio has stood ready and available up to today in fact for the defense attorneys to come in and examine any of the physical exhibits that the State of Ohio has within its possession and is prepared to use at trial.

"I have asked them to please get in touch with us and we would make those things available; take them over to the police department and let them examine anything that is over in the custody of the police department, and up to today's date, that has not been done.

"There has been some mention about the card, a guest registration card, that came from the hotel in question, the scene of the crime, which the Court is now aware is owned by the defendant's father.

"*That card is one of those items that has been in the possession of the State and that they could have examined at any time.* We finally made a copy of the card and provided that to him but, again, within the rules, they are allowed to inspect and make copies of anything that the State of Ohio has, and they made no effort to communicate that they would like to examine all of the physical pieces of evidence and when it could be mutually done. Mr. Dumas had been available at the convenience of counsel and we have not heard from them." (Emphasis added.)

The Supreme Court noted in *United States* v. *Cronic* (1984), 466 U.S. 648, at 661, that:

"* * * [E]very refusal to postpone a criminal trial will not give rise to * * * [a presumption of ineffective assistance of counsel]. In *Avery* v. *Alabama,* 308 U.S. 444 (1940), counsel was appointed in a capital case only

three days before trial, and the trial court denied counsel's request for additional time to prepare. Nevertheless, *the Court held that since evidence and witnesses were easily accessible to defense counsel, the circumstances did not make it unreasonable to expect that counsel could adequately prepare for trial during that period of time* * * *."* (Emphasis added.)

Certainly it was not unreasonable for the trial court to expect that counsel in this case could adequately prepare for this trial during the five months they had to do so and that this continuance was not warranted under the circumstances.

In conclusion, I have one final worry. The majority seems to express its primary concern in this case with the alleged ineffective assistance of counsel in the *penalty* stage of the proceedings. Since no statutory ground, under R.C. 2929.06, can be found to set aside the sentence of death, the majority has, instead, elected to throw out appellant's conviction in order to resolve the perceived problem. In doing so, it seems that this court is retrying the issues of fact rather than confining itself to a determination of whether there was *sufficient* evidence to have warranted the submission of the case to the jury and whether there was sufficient substantial evidence to support the verdict rendered.

If the majority really feels that there was insufficient evidence presented by the prosecution and the case against appellant was not made, then the majority should order the appellant discharged and save the people of Ohio, the trial and appellate judges and the appellant and his lawyers the time, cost and expense of arguing the motion for dismissal on double jeopardy grounds, which is sure to come. In remanding "to the trial court for further proceedings *consistent with this opinion,*" the question will immediately arise in the minds of the trial court, the prosecutor and the defense attorneys herein as to what this court intends be done with appellant and this case.

For me, that question is clear from the record before us. I would affirm the verdict of the jury, the judgment of the trial court and that of the court of appeals. Accordingly, for the reasons set forth above, I must respectfully dissent.

HOLMES, J., concurs in the foregoing dissenting opinion.

## APPENDIX

CASE # 182258 7/11/83
GARY JOHNSON

This LeTTer

is To my Judge asking that you change my Lawer whos is now in ar wants to handle my case for many reason this case is so Important i need to have one i feel is going to do the best job he can for me. some one who knows me & belives in me and this person i Trust with my Life is Farris Willams 951-1111 he has been my Lawer for over Ten years and i have spoken To him and he will take my case if he is allowed to do so even if i have no money he know's that already. I wish Fred D. Middleton for to stay on my case with Mr. Wilson if you permit him to handle my case Please

Taking nothing from Mr. Defronco i would rather have Middleton & Willams if its all right with you Judge Thank you for your Time

Mr. Gary Johnson