Michael Goodwin, defendant-appellant, appeals from the judgment of the Cuyahoga County Court of Common Pleas in which the trial court denied his petition for postconviction relief without conducting an evidentiary hearing. Appellant assigns five errors for this court's review.
Appellant's appeal is not well taken.
On September 28, 1994, a four count indictment was returned against the appellant by the Cuyahoga County Grand Jury. Appellant was indicted on one count of aggravated murder with both purpose and prior calculation and design, in violation of R.C. 2903.01 (A), one count of aggravated murder while committing, or fleeing immediately after committing, aggravated robbery, in violation of R.C. 2903.01 (B). one count of aggravated robbery and one count of having a weapon while under a disability. Both counts of aggravated murder contained felony murder and firearm specifications. The aggravated robbery count contained a firearm specification. A jury trial commenced on December 5, 1994.
At trial, evidence was presented that the appellant had recruited two friends to assist him in his plan to rob the Big Star Market located at E. 55th St. and Quimby Avenue in Cleveland. The appellant entered the store with his two sidekicks and proceeded to pull a .357 Magnum firearm on the store clerk, Mustafa Sammour, and then to place the muzzle against Sammour's forehead. Although Sammour cooperated in the hold-up attempt, the appellant nevertheless shot Sammour in the forehead, killing him instantly. After killing Mustafa Sammour, the appellant put the gun to the head of the other clerk who was working that day, Almohannad Ismail "Shorty" Sammour — Mustafa's cousin, and demanded that he open the store's safe. As Shorty was in the process of opening the safe and handing over its contents to the appellant, the appellant fired another shot, this one into the floor of the market. The appellant finally ended the ordeal when he learned that a milk delivery truck had pulled up outside of the store. As he was exiting the market, the appellant leaned over the lifeless body of Mustafa Sammour to retrieve more cash from the open register.
On December 12, 1994, the appellant was found guilty by the jury on all counts and specifications. On December 20, 1994, the penalty phase of the trial was held. The jury unanimously recommended that the appellant be sentenced to death. The trial court accepted the jury's recommendation, and imposed the death penalty upon the appellant on December 29. 1994. The trial court also imposed three additional sentences, to run consecutively, of three years on the gun specifications, 10-25 years for the aggravated robbery conviction, and 1 1/2 years for carrying a weapon while under a disability.
On February 8, 1995, the appellant filed a notice of appeal with this court from the jury verdict on the aggravated murder counts and the sentence of the trial court. In an opinion dated April 17, 1997, this court affirmed the verdict and the sentence of the trial court. See State v. Goodwin (1997), Cuyahoga App. No. 68531, unreported.
On September 20, 1996, the appellant filed a Petition to Vacate or Set Aside Judgment and/or Sentence, pursuant to R.C. 2953.21. The petition contained seven claims for relief. The first claim for relief alleged that the appellant's trial attorneys failed to investigate and present mitigating evidence "which was available in abundance" at the sentencing phase of the trial. The second claim for relief states that the widespread media coverage, and the resultant polarization of the Arab and African-American communities, denied the appellant a fair trial and a "reliable death sentence." In his third claim for relief, the appellant alleged that his trial counsel failed to investigate and present evidence which would have supported a jury instruction of involuntary manslaughter. The fourth claim for relief alleged that trial counsel were deficient in their failure to preserve the complete trial record for appellate review. The fifth and sixth claims for relief were premised on the unconstitutionality of Ohio's death penalty as it relates to members of racial minorities. The seventh claim for relief alleged that the appellant's sentence was void or voidable because the use of the electric chair to impose the death sentence constitutes cruel and unusual punishment.
On January 15, 1997, the underlying petition for postconviction relief was denied by the trial court without a hearing having been held, although the trial court did issue a fairly extensive journal entry explaining its decision to deny the petition. The trial court's decision correctly recognized that the focus of the petition for postconviction relief was on the claims of ineffective assistance of counsel, which are found in the first, third and fourth claims for relief. The within appeal from that decision was timely followed on February 12, 1997.
The appellant assigns five errors for this court's review of the denial of the petition for postconviction relief. The first assignment of error states:
 I. THE TRIAL COURT ERRED IN DENYING APPELLANT'S CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL (PETITIONER'S FIRST CLAIM FOR RELIEF). THE FAILURE BY COUNSEL TO PREPARE FOR AND PRESENT EVIDENCE IN THE SENTENCING PHASE OF THE PROCEEDINGS VIOLATED APPELLANT'S RIGHTS AS GUARANTEED BY THE FIFTH, SIXTH, EIGHTH, NINTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 1, 2, 9, 10, 16 AND 20 OF THE OHIO CONSTITUTION.
In his first assignment of error, the appellant claims that the trial court erred in finding that he was not denied effective assistance of counsel by the alleged failure of appellant's trial counsel to adequately prepare for the sentencing phase of the trial.
Appellant's claims of ineffective assistance of counsel at the sentencing phase of the trial were addressed by this court in great detail in its earlier opinion, wherein it was determined that they were without merit.
In order to substantiate a claim of ineffective assistance of counsel, the appellant is required to demonstrate that: 1) the performance of defense counsel was seriously flawed and deficient; and 2) the result of the appellant's trial or legal proceeding would have been different had defense counsel provided proper representation. Strickland v. Washington (1984),466 U.S. 668, State v. Brooks (1986), 25 Ohio St.3d 144.
In reviewing a claim of ineffective assistance of counsel, it must be presumed that a properly licensed attorney executes his legal duty in an ethical and competent manner. State v. Smith
(1985). 17 Ohio St.3d 98; Vaughn v. Maxwell (1965), 2 Ohio St.2d 299.
The Supreme Court of Ohio, with regard to the issue of ineffective assistance of counsel, held in State v. Bradley
(1989), 42 Ohio St.3d 136, that:
 "When considering an allegation of ineffective assistance of counsel, a two-step process is usually employed. First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness." State v. Lytle (1976), 48 Ohio St.2d 391, 396-397, 2 O.O.3d 495, 498, 358 N.E.2d 623, 627, vacated in part on other grounds (1978), 438 U.S. 910. This standard is essentially the same as the one enunciated by the United States Supreme Court in Strickland v. Washington (1984), 466 U.S. 668.
 Even assuming that counsel's performance was ineffective, this is not sufficient to warrant reversal of a conviction. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. Cf. United States v. Morrison, 449 U.S. 361, 364-365
(1981)." Strickland, supra, at 691. To warrant reversal, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, supra, at 694. In adopting this standard, it is important to note that the court specifically rejected lesser standards for demonstrating prejudice. * * *
 Accordingly, to show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.
State v. Bradley, supra, at 141, 142.
R.C. 2953.21 (A), which governs petitions for postconviction relief, provides in pertinent part:
 (A) Any person convicted of a criminal defense * * * claiming that there was such a denial or infringement of his rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States, may file a verified petition at any time in the court which imposed sentence, stating the grounds for relief upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file such supporting affidavit and other documentary evidence as will support his claim for relief.
R.C. 2953.21 (C) provides:
 (C) Before granting a hearing the court shall determine whether there are substantive grounds for relief * * *. In making such a determination, the court shall consider, in addition to the petition and supporting affidavits, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of court, and the court reporter's transcript, if ordered and certified by the court, shall be taxed as court costs. If the court dismisses the petition, it shall make and file findings of fact and conclusions of law with respect to such dismissal.
The postconviction relief process permits criminal defendants who allege that their convictions are void or voidable on state or federal constitutional grounds to petition the trial court for an evidentiary hearing pursuant to R.C. 2953.21 (A). State v.Ball (July 30, 1998), Cuyahoga App. No. 73193, unreported. The petitioner bears the initial burden of submitting evidentiary documents containing sufficient operative facts to demonstrate his claim and warrant a hearing. Id. A petition for postconviction relief is subject to a dismissal without a hearing when the record indicates that the petitioner failed to submit evidentiary documents containing sufficient operative facts.State v. Scott, (1989), 63 Ohio App.3d 304; State v. Jackson
(1980), 64 Ohio St.2d 107, 413 N.E.2d 819, syllabus.
Res judicata, also known as "claim preclusion," is the doctrine under which a final judgment on the merits bars a party from bringing another lawsuit based upon the same claim. Whitehead v.Gen. Tel. Co. (1969), 20 Ohio St.2d 108. Res judicata extends to bar not only claims which were actually litigated, but "every question which might have properly been litigated." Stromberg v.Bratenahl Bd. of Edn. (1980), 64 Ohio St.2d 98.
Under the doctrine of res judicata, constitutional issues cannot be considered in postconviction proceedings under R.C.2953.21 where they have already been or could have been fully litigated by the petitioner while represented by counsel, either before his judgment of conviction or on direct appeal from that judgment. State v. Perry (1967), 10 Ohio St.2d 175; State v.McCullough (1992), 78 Ohio App.3d 587, 591. Issues properly before a court are those issues which could not have been raised on direct appeal due to the fact that the evidence supporting such issues is dehors the record. State v. Milanovitch (1975),42 Ohio St.2d 46. State v. Ball, supra. If a court finds that an issue raised in a petition for postconviction relief has, or should have been raised, on direct appeal or in a previous postconviction relief motion, the court may dismiss the petition on the grounds of preclusion. State v. Ball, supra.
In the present case, a review of the record indicates that the appellant raised, on direct appeal, the exact claim as is raised in the first assignment of error pertaining to the alleged ineffective assistance of counsel during the sentencing phase of the trial. This court considered the claim of ineffective assistance of counsel and rejected it as being without merit. The appellant now points to some alleged new evidence outside the record which purportedly establishes that the trial attorney failed to properly investigate the appellant's background.
This court stated in its earlier opinion:
 Appellant's counsel informed the trial judge that they had thoroughly prepared and evaluated the case. Counsel had spoken with appellant's family. Trial counsel determined that it would be problematic for appellant's defense to present any evidence because it would risk the door being opened for otherwise inadmissible and very negative evidence being presented by the state. Some of that evidence was appellant's five prior aggravated robbery offenses. * * *
 The mere failure to present mitigating evidence at the penalty phase of a capital trial does not itself constitute proof of ineffective assistance of counsel or deprive a defendant of a fair trial. This may be the result of a tactical, informed decision by counsel. State v. Johnson (1986), 24 Ohio St.3d 87. * * * The evidence in the instant case reflects * * * a calculated decision not to present evidence. This decision is one of trial tactics and will not be disturbed upon appeal. Appellant has not met his burden to show his counsel's performance was deficient. See State v. Hutton (1990), 53 Ohio St.3d 36. * * *
 The specter of residual doubt as to appellant's identity as the actual killer was raised. * * * Counsel further focused on the relatively light sentences which Johnson and Padgett would receive and asked the jury for proportionality when sentencing the appellant. This may have been appellant's best argument for mitigation.
 Appellant argues there was mitigation evidence to be presented including his drug-dependent birth, mental abuse by his mother, and some sort of physical problem with the development of his intestines at birth. However, counsel averred they did investigate appellant's background and thought it best not to present witnesses on appellants behalf due to other information which could have been revealed. * * * Counsel made a tactical decision. * * *
 None of the instances complained of by appellant rise to the level of a deprivation of effective counsel. There was not a breakdown of the adversarial process which rendered the result of appellant's trial unreliable.
State v. Goodwin, supra. (Emphasis added.)
The "new" evidence which the appellant included in his petition for postconviction relief, and was not in the record on direct appeal, includes "research" indicating that one of the trial counsel "routinely" presented little mitigating evidence during the sentencing phase of capital murder cases, affidavits from some relatives and acquaintances of the appellant stating that they were never contacted by trial counsel, but if they had been contacted they would have told of instances of problems during appellant's childhood,[1] an affidavit from a neuropsychologist who determined that the appellant had a lower than average I.Q., and an affidavit from a social worker employed by the Ohio Public Defender's Commission who, if she was an attorney qualified to handle capital cases, would always hire a mitigation specialist and present mitigating evidence at the penalty phase of capital trials. The appellant also submitted an affidavit from a criminal defense attorney in Franklin County who stated that he would have handled the sentencing phase of appellant's trial differently than did appellant's counsel.
Even if this court accepts as fact the allegation that one of appellant's defense attorneys at trial did not routinely offer substantial mitigating evidence during the sentencing phase of capital cases, this contention actually bolsters the prior holdings of this court and of the trial court that the decision not to do so in this case was a sound tactical decision. If appellant's counsel, both of whom were experienced trial attorneys, had routinely offered such evidence, but declined to do so in the instant case, then the appellant would have a stronger argument that the assistance of counsel provided to him during trial was ineffective. The fact that an attorney with substantial experience in capital cases believed that such evidence is generally ineffectual tends to indicate that the decision not to present such evidence in this case was a sound tactical decision, rather than an aberrant instance of seriously flawed or deficient legal representation.
The appellant has failed to demonstrate that had, the omitted witnesses been called to testify, the outcome of his trial and/or his sentence would have been different. The evidence that allegedly would have been offered was simply more of the same type of evidence that the Ohio Supreme Court has held does not mitigate the aggravating circumstances of a "senselessly cruel aggravated murder in the course of an aggravated robbery." Statev. Williams (1991), 74 Ohio App.3d 686, 693. (Citation omitted.) In Williams, this court addressed a set of circumstances very similar to those in the case at hand and concluded:
 In his petition for postconviction relief, Williams submitted a mass of affidavits. Such affidavits, however, add only additional detail to support his original mitigation theory: that he pursued a life of crime to compensate for a troubled childhood. Such evidence does not demonstrate the diminished responsibility that the legislature considered to be mitigating. Therefore, we do not believe that counsel's performance was deficient by failing to present certain evidence during the mitigation phase of the trial. The absence of such testimony did not prejudice Williams so as to render the result unreliable.[2]
The affidavits from the family members and friends of the appellant do not present any new evidence dehors the record that would require that this court disregard the res judicata effect of our earlier decision cited above. The purported mental and physical abuse suffered by the appellant in his childhood was known by this court at the time that the above cited decision was issued. That decision addressed the identical issue of mitigation evidence which could have been presented at the sentencing phase of the trial by appellant's counsel (i.e., "drug-dependent birth," "mental abuse," "physical problem[s]"), but nonetheless concludes that counsel made a reasonable tactical decision not to risk the disclosure of additional damaging information. Therefore, this court is precluded by the doctrine of resjudicata from revisiting the issue of whether trial counsel's decision to not present certain potentially mitigating evidence constituted ineffective assistance of counsel.
The appellant's first assignment of error is not well taken both because there is no evidence in the record that the appellant was denied effective assistance of counsel and because appellant's claim is barred by the doctrine of res judicata.
Appellant's second assignment of error states:
 II. TRIAL COURT ERRED WHEN IT DENIED APPELLANT GOODWIN AN EVIDENTIARY HEARING IN VIOLATION OF HIS RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH, NINTH, AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 1, 2, 9, 10, 16, AND 20 OF THE OHIO CONSTITUTION.
In the case sub judice, a review of the record from the trial court demonstrates that the trial court did not err in dismissing appellant's petition for postconviction relief without first conducting an evidentiary hearing. In State v. Jackson (1980),64 Ohio St.2d 107, 111, 413 N.E.2d 819, 822-823, the Court stated:
 Before a hearing is granted, the petitioner bears the initial burden in a post-conviction (sic) proceeding to submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and also that the defense was prejudiced by counsel's ineffectiveness.
 Broad assertions without a further demonstration of prejudice do not warrant a hearing for all postconvictions (sic) petitions. General conclusory allegations to the effect that a defendant has been denied effective assistance of counsel are inadequate as a matter of law to impose an evidentiary hearing. See Rivera v. United States (1963), 318 F.2d 606. (Emphasis in original.)
In the instant case, the only operative facts that were submitted along with the petition for postconviction relief to show the incompetence of trial counsel were numerous affidavits from relatives, acquaintances and "experts," who all agreed that appellant's counsel should have conducted more extensive research into the appellant's background, and should have attempted to present mitigating evidence at the sentencing phase of trial. There were no new operative facts which tended to show that the appellant was prejudiced by counsel's ineffectiveness presented to the trial court that would have mandated that a hearing be granted on the petition for postconviction relief.
The appellant also claims in the within appeal that he presented sufficient evidence dehors the record in support of his other claims for relief so as to merit a hearing on his petition for postconviction relief. Specifically, appellant states that sufficient evidence dehors the record of widespread media coverage which denied him a fair trial was presented to warrant a hearing and, also, that there was sufficient evidence dehors the record to support a hearing on the following other claims for relief: appellant's third claim for relief which alleged that trial counsel should have presented evidence supporting a jury instruction on involuntary manslaughter; appellant's fourth claim for relief which alleged that trial counsel were deficient in their failure to preserve the complete record for appellate review; appellant's fifth and sixth claim for relief that the death penalty as applied in Ohio is racially biased; and the appellant's seventh claim for relief that the use of the electric chair to implement the death penalty constitutes cruel and unusual punishment.
In support of his claim for relief that he was denied a fair trial by excessive media coverage, the appellant attached to his petition for postconviction relief a handful of fairly short newspaper articles from various local papers reporting on the murder and the trial. Some of the articles related the murder of Mustafa Sammour by the appellant to other murders of Arab store owners in Cleveland's inner-city. To say that the media coverage afforded this case created a "political environment which prohibited anything less than a death sentence in this case" is both disingenuous and fatuous. The trial court had no obligation to conduct a hearing based on this claim for relief as there was absolutely no evidence that any juror was impacted by (or was even aware of) the allegedly excessive media coverage, or that the appellant was prejudiced in anyway by this coverage. Additionally, this claim could have been raised at trial or on direct appeal and is barred by the doctrine of res judicata.
Each of the other claims for relief listed by the appellant in support of his second assignment of error as deserving of a hearing, were thoroughly addressed by this court in its earlier opinion on direct appeal and will not be revisited at this time. See State v. Goodwin, supra.
Appellant's second assignment of error is overruled.
Appellant's third assignment of error states:
 III. THE TRIAL COURT ERRED IN DISMISSING MR. GOODWIN'S POST-CONVICTION (SIC) PETITION WITHOUT GRANTING MR. GOODWIN'S MOTION FOR DISCOVERY TO SUPPORT THE CLAIMS CONTAINED IN THE PETITION IN VIOLATION OF THE FIFTH, SIXTH, EIGHTH, NINTH, AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 1, 2, 9, 10, 16, AND 20 OF THE OHIO CONSTITUTION.
In State v. Lott (November 3, 1994), Cuyahoga App. Nos. 66388/66389/66390, unreported, this court stated that:
 We * * * conclude that appellant was not entitled to conduct discovery under the rules of civil procedure in a post-conviction (sic) relief proceeding. It must be emphasized that a post-conviction (sic) relief proceeding under R.C. 2953.21 does not grant power to the trial court to authorize discovery under the Rules of Civil Procedure.
It is clear that the appellant was not entitled to seek discovery in the context of the proceeding below. Therefore, the trial court did not err when it denied appellant's petition for postconviction relief without affording the parties an opportunity to engage in discovery.
Appellant's third assignment of error is not well taken.
Appellant's fourth and fifth assignments of error having a common basis in law and fact, will thus be addressed concurrently:
 IV. THE TRIAL COURT ERRED IN DENYING APPELLANT'S PETITION TO VACATE OR SET ASIDE SENTENCE IN VIOLATION OF THE FIFTH, SIXTH, EIGHTH, NINTH, AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 2, 9, 10, AND 16 OF THE OHIO CONSTITUTION.
 V. THE TRIAL COURT ERRED IN FAILING TO ISSUE SUFFICIENT FINDINGS OF FACT AND CONCLUSIONS OF LAW IN VIOLATION OF APPELLANT'S RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH, NINTH, AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 1, 2, 9, 10, 16, AND 20 OF THE OHIO CONSTITUTION.
In both of the above assignments of error, the appellant argues that the trial court improperly denied the appellant's petition for postconviction relief because the journal entry of the trial court did not specifically address each of the seven claims for relief presented by the appellant in his petition.
As was discussed in detail earlier in this opinion, the claims for relief which were not specifically addressed in the trial court's journal entry were nonetheless barred by the doctrine of res judicata. In State v. Mapson (1982), 1 Ohio St.3d 217, 219,438 N.E.2d 910, 912, the Supreme Court of Ohio stated "the obvious reasons for requiring findings are * * * to apprise petitioner of the grounds for the judgment of the trial court and to enable the appellate courts to properly determine appeals in such a case." The journal entry in the instant case is in substantial compliance with the criteria for findings announced in Mapson, as it was sufficient to apprise the appellant of the grounds for the decision. A trial court need not revisit and restate matters earlier resolved by direct appeal. The trial court has a right to rely on this court's opinion in State v.Goodwin (1997), Cuyahoga App. No. 68531, unreported. The lower court's entry resolving the postconviction request admittedly could have been more thorough, but merely because the entry was not labeled "findings of facts and conclusions of law" is not fatal as it clearly functions as such. See State ex rel. Carrionv. Harris (1988), 40 Ohio St.3d 19. 530 N.E.2d 1330.
Appellant's fourth and fifth assignments of error are overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ___________________________________ MICHAEL J. CORRIGAN JUDGE
 PORTER, A.J., and SPELLACY, J., CONCOR.
N.B. This entry is an announcement of the court's decision. See App.R. 22 (B), 22 (D) and 26 (A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22 (E) unless a motion for reconsideration with supporting brief, per App.R. 26 (A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22 (E). See, also, S. Ct. Prac. R. II, Section 2 (A) (1).
[1] Some of these episodes that were related in the affidavits attached to the petition for postconviction relief include physical and mental abuse of the appellant by his mother (who was a drug abuser) and her various boyfriends, the appellant's father encouraging a woman to perform oral sex on the appellant when he was five years old, repeated bed wetting by the appellant into his early adult years, the fact that appellant's grandmother was his primary care giver during his childhood and that he was shook up when she died, and that the appellant would sometimes dress in "really warm clothes when it was summer time."
[2] In State v. Williams, the claim for relief of ineffective assistance of counsel contained in the petition for postconviction relief was not barred by res judicata because the petitioner in that case was represented by the same counsel on direct appeal as had represented him at trial. Counsel on direct appeal could not have been expected to raise his own ineffectiveness as an assignment of error.