[Cite as *State v. Rickard*, 2016-Ohio-3374.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio                                     Court of Appeals Nos. WD-15-046
                                                                                  WD-15-047
      Appellee

                                     Trial Court Nos. 2013CR0574
v.                                                                                 2013CR0596

Cody Ross Rickard                           **DECISION AND JUDGMENT**

      Appellant                            Decided:  June 10, 2016

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney, Gwen
Howe-Gebers, David T. Harold, and Martha S. Schultes, Assistant
Prosecuting Attorneys, for appellee.

Derek A. DeBrosse and Matthew W. Upton, for appellant.

* * * * *

**SINGER, J.**

{¶ 1} Appellant, Cory Ross Rickard, appeals from a decision of the Wood County

Court of Common Pleas denying his petition for post-conviction relief.  For the reasons

that follow, we reverse.

**{¶ 2}** In 2014, appellant was convicted by a jury of one count of murder, two counts of aggravated vehicular homicide, two counts of felonious assault, and two counts of vehicular assault. He was sentenced to an aggregate prison term of 29 years. This court affirmed his convictions on August 14, 2015. *State v. Rickard*, 6th Dist. Wood No. WD-14-017, 2015-Ohio-3298.

**{¶ 3}** On October 6, 2014, appellant filed a petition for post-conviction relief or, in the alternative, motion for a new trial. The trial court denied it on June 19, 2015. Appellant now appeals, in this consolidated appeal, setting forth the following assignment of error:

> I. The trial court erred by not finding that counsel was ineffective resulting in an infringement on Mr. Rickard's constitutional rights.

## Law

**{¶ 4}** It is well-settled in Ohio that a post-conviction relief petition "will be granted only where the denial or infringement of constitutional rights is so substantial as to render the judgment void or voidable." *State v. Shuster*, 5th Dist. Morgan No. 14 AP 0003, 2014-Ohio-4144, ¶ 14, citing *State v. Jackson*, 5th Dist. Delaware Nos. 04CA-A11-078, 04CA-A-079, 2005-Ohio-5173, ¶ 13. Accordingly, a petition for post-conviction relief may be granted only if the defendant can demonstrate "a violation of constitutional dimension that occurred at the time that the defendant was tried and convicted." *Id.*, citing *State v. Powell*, 90 Ohio App.3d 260, 264, 629 N.E.2d 13 (1st Dist.1993).

2.

**{¶ 5}** The trial court's decision to grant or deny a petition for post-conviction relief will not be overturned on appeal absent a finding of abuse of discretion. *State v. Ward*, 6th Dist. Ottawa No. OT-13-001, 2014-Ohio-426, ¶ 17. An abuse of discretion connotes more than a mere error of law or judgment, instead requiring a finding that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). Further, "[i]n the interest of providing finality to judgments of conviction, courts construe the post-conviction relief allowed under [the statute] narrowly." *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 47, citing *State v. Steffen,* 70 Ohio St.3d 399, 639 N.E.2d 67 (1994).

**{¶ 6}** The general standard of review for evaluating claims of ineffective assistance of counsel was set forth by the Supreme Court of Ohio in *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus, as follows:

> 2. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. (*State v. Lytle*, 48 Ohio St.2d 391, 358 N.E.2d 623 (1976); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80L.Ed.2d 674 (1984), followed.)

3.

3. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.

{¶ 7} Further, this court has recognized that:

[t]here is 'a strong presumption that counsel's conduct falls within the wide range of professional assistance * * *.' *Bradley*, *supra*, at 142, 538 N.E.2d 373, quoting *Strickland, supra*, at 689. In this regard, 'the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." '*Strickland, supra,* at 689, quoting *Michael v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955). Ohio presumes a licensed attorney is competent. *Vaughn v. Maxwell*, 2 Ohio St.2d 299, 209 N.E.2d 164 (1965). *State v. Jackson*, 6th Dist. Erie No. E-01-024, 2002-Ohio-2359, ¶ 35.

**Facts of the Case**

{¶ 8} On October 28, 2013, numerous CSX employees and subcontractors were replacing railroad tracks near the town of Bradner in Wood County, Ohio. A barricade was placed at the intersection of James Street and Bradner Road (aka South Main Street) indicating "ROAD CLOSED AT RAILROAD CROSSING LOCAL TRAFFIC ONLY." A second "ROAD CLOSED" barricade was placed across both lanes of Bradner Road, approximately 372 feet south of the first road closed sign, just after the last private

4.

residence before the road intersects the tracks. Vernon Bowling, a CSX mechanic, had parked his truck, facing south, a few feet from the railroad crossing. The truck blocked a portion of the northbound lane of Bradner Road, approximately 139 feet south of the second barricade.

{¶ 9} At approximately 11:18 a.m., several CSX employees were standing at the back end of the truck waiting for Bowling to repair a machine that had broken down on the track. Lewis Knott was seated on the back bumper of the truck, Jimmy D. Conley and Paul Castle stood near Knott.

{¶ 10} At the same time, appellant drove his white Dodge Charger south on Bradner Road. He drove around the first barricade, then into the grass around the second barricade. As he accelerated his vehicle, appellant struck a metal pole bearing a curve warning sign located 65 feet south of the second barricade. Then, appellant struck a wooden utility pole located 59 feet south of the metal pole. Both the metal pole and the wooden pole were sheared from their bases.

{¶ 11} Appellant's vehicle struck Conley, Castle, and the back panel of the mechanic's truck before it came to stop in a drainage ditch. Upon impact with appellant's vehicle, Castle's body was thrown more than 80 feet. Castle died from complications of multiple blunt force traumas. The collision caused Conley to fall onto Knott. Conley suffered fractures to his pelvis and vertebrae. Knott suffered injuries to his legs and hip.

5.

{¶ 12} When approached, appellant stated in a "demonic" voice that "the devil is my savior." When he exited the vehicle he appeared to be celebratory, stating "Yeah." Another witness described appellant "hooting and hollering and saying 'this was great.'" A deputy who arrived at the scene after appellant was restrained in the back seat of the patrol car observed appellant "was just rambling just crazy thoughts or crazy statements." The Wood County Hospital emergency room personnel indicated appellant's "mental behavior was of great concern." Appellant insisted the deputy and medical personnel tell him that they loved him. In the emergency room while handcuffed, he was "dry humping the door in a sexual manner, and he was laughing about it. His behavior was completely erratic."

## Argument

{¶ 13} Appellant contends his trial counsel was ineffective in failing to explore the possibility that he suffered from a mental defect at the time of the crime.

{¶ 14} In support of his petition for post-conviction relief, appellant submitted the affidavit of psychologist Dr. John L. Tilley. The doctor testified to an affidavit prepared by appellant wherein appellant states on the day of the incident, he was experiencing premonitions of God and realized that God was testing him. After the accident, appellant stated he got out of his car to celebrate because he had put his faith in God and had survived. His hospital records indicate appellant was hallucinating after the accident and had to be forcibly restrained for his safety and that of others.

6.

{¶ 15} Appellant, who did not testify at trial, submitted his own affidavit. He stated on the day of the accident, he had been experiencing premonitions from God. When he came to the scene, God told him to close his eyes and trust him. Appellant stated he closed his eyes and put his foot on the accelerator believing that God would protect him. Appellant further stated every time he tried to tell his trial counsel what he experienced the day of the accident, his counsel would tell him to be quiet explaining that his case was merely about traffic laws.

{¶ 16} Family members and friends also submitted affidavits describing appellant's strange behavior prior to the accident.

## Conclusion

{¶ 17} In this case, the record as presented to this court establishes a complete failure to investigate the possibility appellant had any history of mental instability or some mental defect from which he was suffering at the time of his horrific and bizarre actions. There is no evidence that counsel explored the option of a not guilty by reason of insanity plea or that counsel ever sought out a mental evaluation for his client. The facts of this case support at least a modest inquiry and exploration of presenting what may have been the only defense available to appellant and that is a defense available under R.C. 2901.01(A)(14). That section states:

> A person is "not guilty by reason of insanity" relative to a charge of an offense only if the person proves, in the manner specified in section 2901.05 of the Revised Code, that at the time of the commission of the

offense, the person did not know, as a result of a severe mental disease or defect, the wrongfulness of the person's acts.

{¶ 18} The burden is on the defendant and must be proved by a preponderance of the evidence. *State v. Filiaggi*, 86 Ohio St.3d 230, 242, 714 N.E.2d 867 (1999). Therefore, the burden is not necessarily high. Nevertheless, no burden can be met by unpresented evidence. A meager investigation would have been a starting point.

{¶ 19} Here, as a result of the disturbing testimony of each of the eyewitnesses, reasonable diligence would compel counsel to make a simple and almost effortless investigation concerning a possible mental defect being present at the time that appellant committed these acts. Yet the record is devoid of any such effort on the part of counsel.

{¶ 20} An attorney should be able to recognize that a fact pattern such as this could result in a finding of insanity by a medical professional and the issue ultimately being presented to the jury for its consideration. *State v. Wotring,* 11th Dist. Lake No. 99–L–114, 2001 WL 1647234 (Dec. 21, 2001). The Ohio Supreme Court has held that a complete and total lack of reasonable investigation gives rise to a presumption of prejudice under *Strickland. State v. Johnson*, 24 Ohio St.3d 87, 494 N.E.2d 1061 (1986).

{¶ 21} We conclude the trial court abused its discretion in finding that appellant was not prejudiced by his trial counsel's failure to investigate the state of his mental health at the time of the accident. We further conclude there is a reasonable probability that a jury faced with evidence of a possible mental defect on the part of appellant would

8.

reach a different result at a new trial.  Accordingly, appellant's sole assignment of error is well-taken.

{¶ 22} On consideration whereof, the judgment of the Wood County Court of Common Pleas is reversed and remanded to said court for further proceedings consistent with this decision.  Costs of this appeal are assessed to appellee pursuant to App.R. 24.

Judgment reversed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.
*See also* 6th Dist.Loc.App.R. 4.


Arlene Singer, J.                                                 _____

                                                                          JUDGE

Thomas J. Osowik, J.

                                                 _____

James D. Jensen, P.J.                                                        JUDGE
CONCUR.

                                                 _____

                                                                          JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.