[Cite as *State v. Simmonds*, 2017-Ohio-2739.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 16AP-332 |
| v. | : | (C.P.C. No. 14CR-232) |
| Devonere Simmonds, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

_____

D E C I S I O N

Rendered on May 9, 2017

_____

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Seth L. Gilbert*, for appellee. **Argued:** *Seth L. Gilbert*.

**On brief:** Timothy Young, Ohio Public Defender, *Charlyn E. Bohland*, and *Katherine R. Ross-Kinzie*, for appellant. **Argued:** *Charlyn E. Bohland*.

_____

APPEAL from the Franklin County Court of Common Pleas

BRUNNER, J.

{¶ 1} Defendant-appellant, Devonere Simmonds, appeals a March 30, 2016 decision of the Franklin County Court of Common Pleas, dismissing his petition for postconviction relief without a hearing. Because we agree that Simmonds failed to demonstrate "substantive grounds for relief," we affirm the trial court's decision to dismiss the petition without a hearing.

## I. INTRODUCTION AND BACKGROUND

{¶ 2} On July 21, 2013, Simmonds shot both James Norvet and Quinten Prater in the head. Prater, who was shot with a shotgun, did not survive. Three days later, on July 24, Simmonds fatally shot a third person, Imran Ashgar, a convenience store clerk during a robbery. He shot him in the eye; departed briefly; then returned and shot him a second time in the head as he lay wounded on the floor. Three days after that, during

No. 16AP-332

Simmonds' attempt to flee Ohio, Simmonds approached William Rudd at a gas station, shot him in the face, and stole his truck. Rudd managed to survive. Simmonds was 17 years old when he committed these offenses.

## II. FACTS AND PROCEDURAL HISTORY

{¶ 3}   On July 25, August 28, and August 29, 2013 respectively, Simmonds was charged as a juvenile for the shootings of Ashgar, Prater, and Rudd. (July 25, 2013 Compl. 13JU-10445; Aug. 28, 2013 Compl. 13JU-11920; Aug. 29, 2013 Compl. 13JU-11966.)  In a hearing held on January 13 2014, the prosecution noted that during the events underlying common pleas case No. 13JU-11920 Simmonds also shot another person (Norvet). (Jan. 13, 2014 Hearing Tr. at 9-10, filed on Jan. 5, 2015.)   The juvenile court issued decisions on January 13, and 14, 2014 binding over Simmonds for trial as an adult in each of the three cases. (Jan. 13, 2014 Bindover Decision 13JU-10445; Jan. 14, 2014 Bindover Decision 13JU-11920; Jan. 14, 2014 Bindover Decision 13JU-11966.)

{¶ 4}   On January 16, 2014, having been bound over to stand trial as an adult, a Franklin County Grand Jury indicted Simmonds[1] for two counts each of aggravated murder and murder (Ashgar and Prater), five counts of aggravated robbery (Prater, Norvet, Ashgar, and Rudd[2]), two counts each of attempted murder and felonious assault (Norvet and Rudd), and one count of having a weapon while under a disability. (Jan. 16, 2014 Indictment.)  Each offense (except the weapon offense) included a gun specification under R.C. 2941.145. *Id.*

{¶ 5}   Simmonds was tried by a jury on the counts relating to Ashgar, Rudd, and one count (for which he was eventually acquitted) related to another party; the remaining counts relating to Prater and Norvet were severed for later trial, and the weapon under disability count was tried to the bench. (Dec. 5, 2014 Jury Verdict Count 4; July 1, 2014 Hearing Tr. at 16-17; Dec. 8, 2014 Hearing Tr. at 797-98.)  A previous decision of this Court summarized the facts adduced at trial:

> Simmonds basically executed the store clerk by shooting him
> in the eye once and then returning to shoot the clerk in the

---

[1] Also indicted with Simmonds was an adult co-defendant who was present during the crimes (though Simmonds was the shooter).  The co-defendant is not relevant to this appeal and is not mentioned further.

[2] The indictment also included a charge of aggravated robbery as to one other alleged victim. (Jan. 16, 2014 Indictment.)  However that charge is not relevant to this appeal because Simmonds was eventually acquitted of the charge. (Dec. 5, 2014 Verdict Count 4.)

> head a second time after the clerk briefly survived the first
> shot. A few days later, while fleeing central Ohio, Simmonds
> found himself in need of a motor vehicle. He shot the owner of
> a vehicle in the head while stealing the car. The owner
> miraculously survived the shooting and was able to testify at
> the trial.

*State v. Simmonds*, 10th Dist. No. 14AP-1065, 2015-Ohio-4460, ¶ 2. Our previous decision noted that the weight of evidence against Simmonds was "massive" and included, among other things, a surveillance tape showing Simmonds executing the clerk, Ashgar. *Id.* at ¶ 7. Following trial, on December 5, 2014, the jury returned a verdict of "guilty" on all counts related to Ashgar and Rudd. (Dec. 5, 2014 Verdicts Counts 1-3, 5-7.)

{¶ 6} On Friday, December 5, 2014, after the jury delivered its verdicts, the trial court denied a request for a presentence investigation as to Simmonds and asked counsel if they would be amenable to convening for sentencing the following Monday, December 8, 2014. (Dec. 5, 2014 Tr. Vol. 5 at 788-89.) Counsel indicated that date would be agreeable. *Id.* Other than the request for a presentence investigation (which the trial court denied), the record contains no request for a continuance at that point. *Id.*

{¶ 7} When proceedings reconvened on December 8, the trial court found Simmonds guilty of the weapon under disability offense and immediately turned to the issue of sentencing. (Dec. 8, 2014 Hearing Tr. Vol. 6 at 797-98.) At sentencing, counsel for Simmonds offered two psychological evaluations of Simmonds. *Id.* at 819-21. One was by psychologist David Tennenbaum, Ph.D. that was prepared on November 4, 2013, for an unrelated juvenile burglary case (common pleas case No. 12JU-13008) and one by psychologist Jaime Adkins, Psy.D.[3] that was prepared on November 18, 2013 for one of the cases for which Simmonds was bound-over (common pleas case No. 13JU-11966); it was attached to the State's May 16, 2014 response to a motion by Simmonds challenging his competence to stand trial. *Id.*; May 16, 2014 Memo Contra. Arguing from these reports (which covered Simmonds' background in considerable detail) Simmonds' counsel stated:

> This case has been a recipe for disaster. We have a 17-year-
> old African-American male, fractured family, one out of seven
> children on his mother's side, one out of twelve on his father's.

---

[3] Counsel, erroneously, referred to Dr. Jaime Adkins as Dr. Jaime Lai during the hearing.

> We have criminal activities on the part of a parent who acted as a role model. Drug use and abuse, alcohol, immaturity, vulnerability, weapons, older boys whom he looked up to. He has a ninth—grade education, an IQ range in the first percentile.
>
> I guess if you put in a convenient store and you have a hot summer night, the result is unfortunately too often very predictable.

(Dec. 8, 2014 Hearing Tr. Vol. 6 at 826.)

{¶ 8} The trial court, after listening to the arguments of counsel attempted "to construct a compassionate yet a serious penalty," and reasoned as follows:

> Certainly the Court, you know, has taken into consideration their youth, their emotional immaturity, the background, the fact they're a product of our system, our criminal system at a young age. Essentially they were left to fend for themselves at age, you know, tender young ages of, you know, 12, 13, 14, and so forth, left to be on the street.
>
> And I ask myself, you know, what, you know, how would anyone cope and adapt to life on the streets at such a young age? I don't know. I don't know. I don't know what I would do or the next person would do.
>
> But, I mean, I do realize that we all have a conscience, I mean, we all are born with an ability to determine and distinguish between right and wrong. And that's what it comes down to. The fundamental ability inside ourselves to be able to determine what's right and wrong.

*Id.* at 828.

{¶ 9} Ultimately, the trial court merged the aggravated murder and murder counts as to Ashgar and the felonious assault and attempted murder counts as to Rudd. (Jan. 12, 2015 Jgmt. Entry at 2.) It then sentenced Simmonds to 3 years on the weapon under disability count, 11 years each on the aggravated robbery counts (as to Ashgar and Rudd) and the attempted murder count (as to Rudd) with an additional 3 years for each of the firearm specifications for each of the 11-year sentences. *Id.* The trial court also sentenced Simmonds to serve life without the possibility of parole for the aggravated murder of Ashgar with an additional 3 years for the firearm specification as to that count and ordered all sentences and specifications to be served consecutively to one another for

a total term of imprisonment of life without parole plus 48 years. *Id.* Simmonds timely appealed arguing, among other things, that his sentence of life without parole was cruel and unusual punishment and that he was denied effective assistance of counsel. *Simmonds* at ¶ 1.

{¶ 10} Approximately seven months after being sentenced on the Rudd and Ashgar offenses, and while the appeal of those cases was pending, Simmonds entered a guilty plea to murder and attempted murder without specifications for the shootings of Prater and Norvet. (Jul. 14, 2015 Guilty Plea.) The trial court sentenced Simmonds to serve 15 years to life for the murder and 11 years for the attempted murder but allowed the sentences to be served concurrently with each other and concurrently with the sentence Simmonds was already serving in relation to the Ashgar and Rudd case. (Jul. 15, 2015 Jgmt. Entry at 2.)

{¶ 11} On September 8, 2015, Simmonds filed a petition for postconviction relief (which was amended ten days later on September 18, 2015 to add supplemental affidavits) before the Franklin County Common Pleas Court, arguing that trial counsel was ineffective in failing to appropriately prepare for and present evidence of mitigating circumstances during sentencing. (Sept. 8, 2015 Post-Conviction Petition; Sept. 18, 2015 Amended Post-Conviction Petition.) On October 27, 2015, after the petition was filed and amended, but before the State responded, this Court issued a decision in the direct appeal. Among other matters addressed, this Court found that counsel was not ineffective in representing Simmonds and that, far from being cruel and unusual, given Simmonds' crimes, "[a] sentence of life in prison without the possibility of parole was readily foreseeable." *Simmonds* at ¶ 35.

{¶ 12} The State answered and moved to dismiss the postconviction petition without a hearing on February 8, 2016, arguing, consistent with this Court's decision, that counsel's presentation had been adequate and that, in any case, because of the gravity of Simmonds' crimes, the result would not have changed even had the presentation been more robust. (Feb. 8, 2016 Mot. to Dismiss Post-Conviction in passim.) Shortly thereafter, Simmonds responded to the motion and the State replied. (Feb. 23, 2016 Memo Contra Mot. to Dismiss; Mar. 1, 2016 Reply in Support of Mot. to Dismiss.) On March 30, 2016, after full briefing on Simmonds' motion and the intervening decision of

No. 16AP-332

this Court on direct appeal, the trial court granted the motion to dismiss without a hearing. The trial court reasoned that Simmonds had not shown deficient performance or a reasonable probability that "additional reports and testimony of various experts would have altered the outcome of the sentencing hearing." (Mar. 30, 2016 Decision at 10.)

{¶ 13} Simmonds now appeals.

## III. ASSIGNMENTS OF ERROR

{¶ 14} Simmonds presents two assignments of error for review:

[1.] The trial court erred when it failed to consider Devonere Simmonds's claims of ineffective assistance of counsel utilizing a per-se prejudice standard of review when counsel did not present mitigation at a critical stage of the proceedings, in violation of the Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution; Article I, Sections 10 and 16, Ohio Constitution; R.C. 2953.21; *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984); and, *State v. Johnson*, 24 Ohio St.3d 87, 494 N.E.2d 1061 (1986).

[2.] The trial court abused its discretion in making a merits determination without holding a hearing because Devonere's post-conviction petition provided sufficient operative facts to demonstrate that trial counsel was ineffective for failing to investigate and present mitigation evidence, in violation of the Sixth and Fourteenth Amendments to the U.S. Constitution; Article I, Sections 10 and 16, Ohio Constitution; R.C. 2953.21; *Miller v. Alabama*, ___ U.S. ___, 132 S.Ct. 2455, 2469, 183 L.Ed.2d 407 (2012); and, *State v. Long*, 138 Ohio St.3d 478, 2014-Ohio-849, 8 N.E.3d 890[.]

## IV. DISCUSSION

### A. Standard of Review

#### 1. Postconviction

{¶ 15} The postconviction relief process is a collateral civil attack on a criminal judgment. *State v. Steffen*, 70 Ohio St.3d 399, 410 (1994). "It is a means to reach constitutional issues which would otherwise be impossible to reach because the evidence supporting those issues is not contained" in the trial court record. *State v. Murphy*, 10th Dist. No. 00AP-233 (Dec. 26, 2000); *see also State v. Carter*, 10th Dist. No. 13AP-4, 2013-Ohio-4058, ¶ 15.

No. 16AP-332

{¶ 16} A defendant is not automatically entitled to an evidentiary hearing on a postconviction relief petition. *State v. Jackson*, 64 Ohio St.2d 107, 110 (1980). R.C. 2953.21(C) provides that, "[b]efore granting a hearing on a petition * * * the court shall determine whether there are substantive grounds for relief." The petitioner bears the initial burden of offering evidence that demonstrates a cognizable claim of constitutional error. *State v. Ibrahim*, 10th Dist. No. 14AP-355, 2014-Ohio-5307, ¶ 9. Because the burden is the petitioner's, a postconviction relief petition may be denied without an evidentiary hearing when the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that the petitioner has offered sufficient operative facts to establish substantive grounds for relief. *State v. Calhoun*, 86 Ohio St.3d 279 (1999), paragraph two of the syllabus. We review for abuse of discretion a trial court's denial of a postconviction relief petition without a hearing. *State v. McBride*, 10th Dist. No. 14AP-237, 2014-Ohio-5102, ¶ 11.

## 2. Ineffective Assistance

{¶ 17} Ineffective assistance of counsel claims are reviewed using the two-pronged approach set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "First, the defendant must show that counsel's performance was deficient. * * * Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* at 687. " '[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.' " *State v. Bradley*, 42 Ohio St.3d 136, 143 (1989), quoting *Strickland* at 697. If one part cannot be proved, regardless of which or in which order, the analysis ends, and the claim for ineffective assistance of counsel fails. *Id.*

{¶ 18} "In evaluating counsel's performance, 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances the challenged action "might be considered sound trial strategy." ' " *State v. Roush*, 10th Dist. No. 12AP-201, 2013-Ohio-3162, ¶ 37, quoting *Strickland* at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955). " 'To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would

No. 16AP-332

have been different.' " *State v. Griffin*, 10th Dist. No. 10AP-902, 2011-Ohio-4250, ¶ 42, quoting *Bradley* at paragraph three of the syllabus.

B. **First Assignment of Error—Whether the Trial Court Erred in Addressing Prejudice Rather than Holding that the Failure to Engage in Substantial Mitigation was Prejudice Per Se**

{¶ 19} Simmonds argues that, as a minor facing the possibility of a sentence of life without parole, he was entitled to a more significant mitigation presentation akin to a death penalty mitigation hearing and that the failure to engage in such detailed mitigation should have been considered prejudicial per se. (June 30, 2016 Simmonds Brief at 8-20.) The State responds that although juvenile life without parole is similar to the death penalty for adults in that it is the most severe sanction available, it is not subject to the same statutory procedures and no statute, rule, constitution, or case requires more than was presented or establishes per se prejudice. (Aug. 26, 2016 State's Brief at 33-40, 53-56.) Simmonds is correct that rigorous consideration of an offender's youth is required in sentencing a juvenile to life without parole. But the State is also correct in that no legal precedent imputes per se prejudice to the failure to follow a procedure like a death-penalty mitigation hearing in a case where a juvenile bound over to an adult felony trial court and is sentenced to life in prison without the possibility of parole.

{¶ 20} Both the United States Supreme Court and the Supreme Court of Ohio have recognized that juveniles are different from adult offenders in that their impetuosity and susceptibility to negative influences may lead young people to commit serious offenses but may not reflect irretrievable incorrigibility. *See, e.g., Montgomery v. Louisiana*, __ U.S. __, 136 S.Ct. 718, 733-34 (2016); *Roper v. Simmons*, 543 U.S. 551, 569-71 (2005); *State v. Long*, 138 Ohio St.3d 478, 2014-Ohio-849, ¶ 11-12, 15. According to this philosophy, even juveniles who have committed extremely serious offenses should not necessarily be considered beyond redemption, as the character flaws and other factors that led them to commit the offenses may lessen or be eliminated with age and experience. *Montgomery* at 733-34; *Roper* at 569-71; *Long* at ¶ 11-12, 15. For that reason, the United States Supreme Court has held that the Eighth Amendment prohibits certain criminal punishment for persons who were under 18 when they committed the offense(s) in question. The prohibition includes the death penalty, life in prison without parole for non-homicide offenses, or enacting or enforcing laws that would make life

No. 16AP-332

without parole mandatory for a juvenile offender. *Miller v. Alabama*, ___ U.S. ___, 132 S.Ct. 2455 (2012) (prohibition on mandatory life without parole); *Graham v. Florida*, 560 U.S. 48 (2010) (prohibition on life without parole for non-homicide); *Roper* (prohibition on death penalty).  Recently, the United States Supreme Court has interpreted *Miller* as having stated a substantive rule: life without parole cannot be imposed except upon "the rarest of juvenile offenders, those whose crimes reflect permanent incorrigibility." *Montgomery*, 136 S.Ct. at 734.

{¶ 21} Under *Montgomery,* a trial court must consider the youth of the offender and determine that the "crimes reflect permanent incorrigibility" before imposing life without parole. *Id.*; *Long* at paragraphs one and two of the syllabus.  The United States Supreme Court views life without parole as being "akin" or "analogous" to the death penalty such that "individualized sentencing" is required. *Miller* at 2466-67.  Accordingly, a degree of inquiry into the juvenile's individual circumstances is constitutionally necessary before imposing life without parole.

{¶ 22} The Supreme Court of Ohio also has explained that in a death case a *complete* failure to investigate mitigation may give rise to a presumption of prejudice. *Bradley* at 156, citing *State v. Johnson*, 24 Ohio St.3d 87 (1986).  But no constitution, statute, rule, case, or other legal source plainly states or implies the more specific proposition posited by Simmonds, that it is prejudicial per se to not investigate and conduct a mitigation hearing for potential punishment of life without parole as if it were a death penalty mitigation hearing.  The Ohio General Assembly has enacted a detailed death penalty procedure in order to consider mitigating and aggravating factors before the death penalty is imposed for adult felonies. *See* R.C. 2929.03(D) through (F); R.C. 2929.04.  But the Ohio General Assembly has not enacted a similar or parallel procedure when sentencing juveniles to life in prison without the possibility of parole.

{¶ 23} R.C. 2929.03(E) addresses when a defendant is found at trial not to have been at least 18 years old at the time of an aggravated murder and specifically gives the sentencing court the option to impose a sentence of "[l]ife imprisonment without parole." R.C. 2929.03(E)(1)(a).  The statute is devoid of instruction that the same procedures to be used in an adult death penalty hearings apply for this statutory sentence.  We cannot add

provisions to this statute by judicial decision. We can only adjudicate issues concerning the statute's legal application and its constitutionality, and then only as the issues may be timely offered and not subject to waiver, res judicata, or unripeness.

{¶ 24} Simmonds' first assignment of error is overruled.

## C. Second Assignment of Error—Whether Counsel's Presentation of Mitigation at Sentencing Amounted to Constitutionally Ineffective Assistance

{¶ 25} Simmonds argues that his trial counsel failed to investigate and present appropriate evidence of his lack of maturity, the effect of negative influences on his life, and his potential for rehabilitation through experience and aging. (Simmonds Brief at 20-26.) Had his counsel not failed to prepare and present appropriate information, asserts Simmonds, there is a reasonable probability that he would not have been sentenced to life in prison without parole. *Id.* The State counters, in arguments that roughly parallel the trial court's decision, that Simmonds' attorneys did present information on those topics and that Simmonds' offenses were so egregious that no amount of information or testimony on those topics would have altered the result. (State Brief at 45-53, 56-59.)

{¶ 26} Even if we were to assume that counsel's mitigation presentation was deficient to the constitutionally significant degree required by *Strickland*, we are not convinced that the other element of *Strickland* can be met in this case. Simmonds, even before these events, had a startlingly voluminous criminal history for someone of his age, including assault, carrying a concealed weapon, burglary, and aggravated burglary. (Davis Aff. at ¶ 23, 35.) During the pendency of the action, Simmonds was transferred to the Franklin County Jail for acts that included physically attacking and spitting on staff members of the youth detention facility, wiping feces on the window of his cell to prevent observation, and making a weapon out of a sock and piece of concrete. *Id.* at ¶ 24; Jan. 13, 2014 Order Granting Transfer of Custody 13JU-10445 at 2.

{¶ 27} The crimes Simmonds committed are more than disturbing. In the space of six days, he point blank shot four people in the head for no reason other than they had something he wanted. When Simmonds robbed Ashgar, he shot him in the eye. When Ashgar did not die, Simmonds returned and without provocation delivered a cold, fatal shot to Ashgar's head. When two victims survived (because Simmonds thought they were

No. 16AP-332

dead), Simmonds was at least relieved of an indictment for four aggravated murders; instead it was two. Simmonds' behavior is so far down the scale of acceptable social behavior that the prospect of improvement upon maturity is exceedingly remote. It is not unreasonable to find that Simmonds belongs to a class of offenders that the United States Supreme Court has termed "the rarest of juvenile offenders, [] whose crimes reflect permanent incorrigibility." *Montgomery* at 734. We are not convinced that any amount of mitigation of the sort proposed by the postconviction petition and supporting materials would have stood a reasonable probability of changing Simmonds' sentence. Having found that Simmonds cannot prove he was prejudiced by his counsel's performance, we need not reach the issue of determining whether Simmonds' counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland* at 687. *See also Bradley* at 143, quoting *Strickland* at 697.

{¶ 28} Simmonds' second assignment of error is overruled.

## V. CONCLUSION

{¶ 29} Juvenile offenders facing life without parole are similar to adult offenders facing the death penalty in some respects and, therefore, care is required before imposing the ultimate sanction on them. Under the existing statutory scheme, a trial court is required to consider the youth of the offender and it must determine that the "crimes reflect permanent incorrigibility" before imposing life without parole. *Montgomery*; *Long* at paragraphs one and two of the syllabus. No law in existence in Ohio requires an identical level of mitigation as might be presented in an adult death penalty case, and it is not per se prejudicial for a trial court to not afford such procedures. In Simmonds' cases, his actions were of such a serious nature that he does not appear to have prospects for significant or lasting rehabilitation. His crimes could well be described as reflecting permanent incorrigibility. Simmonds' counsel's opportunity to present a more robust picture of mitigation to the trial court at sentencing would not likely have yielded a different result.

{¶ 30} Both of Simmonds' assignments of error are overruled and the trial court's judgment is affirmed.

*Judgment affirmed.*

SADLER and DORRIAN, JJ., concur.

_____