**NOT RECOMMENDED FOR PUBLICATION**

File Name: 21a0021n.06

Case No. 20-3591

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| DEVONERE SIMMONDS, | ) | **FILED**<br>Jan 11, 2021<br>DEBORAH S. HUNT, Clerk |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| RICHARD BOWEN, Warden, Southern Ohio | ) | OHIO |
| Correctional Facility, | ) | |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | |

BEFORE: **ROGERS, DONALD, and BUSH, Circuit Judges.**

**BERNICE BOUIE DONALD, Circuit Judge.** Devonere Simmonds, an inmate in an Ohio prison, appeals the district court's denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254. He asserts that he was denied effective assistance because of trial counsel's failure to investigate and provide mitigating evidence as to Simmonds' youthful characteristics. Because AEDPA's requirements compel us to, we AFFIRM.

## I. BACKGROUND

Devonere Simmonds, 17 years old at the time of the crimes, was convicted in Ohio state court on one count of aggravated murder, murder, two counts of aggravated robbery, one count of attempted murder, felonious assault, and having a weapon with a disability. *State v. Simmonds,* 2017-Ohio-2739, ¶¶ 4–5, 7 (Ohio App. 10th Dist. May 9, 2017). The trial court tried Simmonds as

an adult and sentenced him to life imprisonment without the possibility of parole. *Id.* at ¶ 9. The state court summarized the events that led to Simmonds' prosecution in an opinion affirming the judgment on direct appeal:

> On July 21, 2013, Simmonds shot both James Norvet and Quinten Prater in the head. Prater, who was shot with a shotgun, did not survive. Three days later, on July 24, Simmonds fatally shot a third person, Imran Ashgar, a convenience store clerk during a robbery. He shot him in the eye; departed briefly; then returned and shot him a second time in the head as he lay wounded on the floor. Three days after that, during Simmonds' attempt to flee Ohio, Simmonds approached William Rudd at a gas station, shot him in the face, and stole his truck. Rudd managed to survive. Simmonds was 17 years old when he committed these offenses.

*Id.* at ¶ 2. Simmonds appealed to the Ohio Supreme Court, which declined jurisdictional review of his case. *State v. Simmonds*, 2016-Ohio-1173 (Ohio 2016). Simmonds subsequently filed a petition for post-conviction relief, alleging, among other claims, that he received ineffective assistance because his counsel failed to present mitigating evidence of youthful characteristics during the sentencing phase. The district court dismissed Simmonds' habeas petition but granted a limited certificate of appealability on the sole issue of ineffective assistance of counsel.

## II. ANALYSIS

In reviewing a district court's decision to dismiss a habeas petition, we typically review its legal conclusions *de novo* and its factual findings for clear error. *Fleming v. Metrish*, 556 F.3d 520, 524 (6th Cir. 2009). "However, where, as here, the district court does not itself conduct an evidentiary hearing and relies instead exclusively on the state-court record, we review the district court's factual findings de novo." *Barton v. Warden, S. Ohio Corr. Facility*, 786 F.3d 450, 460 (6th Cir. 2015) (per curiam). The Antiterrorism and Effective Death Penalty Act ("AEDPA") applies in this case because the trial court considered and denied Simmonds' ineffective assistance of counsel claim, and "[w]hen a claim has been 'adjudicated on the merits in State court proceedings,' AEDPA restricts the availability of federal habeas relief[.]" *Id.* at 459 (quoting

28 U.S.C. § 2254(d)). There are two primary ways that AEDPA restricts such habeas relief. *Id.*

Under AEDPA,

> a federal court may not grant a writ of habeas to a petitioner in state custody with respect to any claim adjudicated on the merits in state court unless (1) the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" . . . or (2) the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings."

*Taylor v. Withrow*, 288 F.3d 846, 850 (6th Cir. 2002) (quoting 28 U.S.C. § 2254(d)(1)-(2)).

An "*unreasonable* application of federal law is different from an *incorrect* application of federal law," and a claim for habeas relief must show more than an incorrect application of federal law. *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 410 (2000)). "Only when fair-minded jurists could not disagree that a state court's merits decision conflicts with Supreme Court precedent may a federal court issue a writ of habeas corpus." *Barton*, 786 F.3d at 460. A federal court may, however, grant relief when a state court has misapplied a "governing legal principle" to "a set of facts different from those of the case in which the principle was announced." *Lockyer v. Andrade,* 538 U.S. 63, 76 (2003). We must therefore determine whether the state court's judgment "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1).

We turn then to the substantive legal principles underlying Simmonds' ineffective assistance of counsel claim. Those principles, as outlined in *Strickland v. Washington*, require a defendant to demonstrate (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defendant. 466 U.S. 668, 687 (1984). In analyzing the performance of counsel, we must accord counsel a high degree of deference. *Id.* at 689. Namely, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the

circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation omitted). We are not required to determine whether there was deficient performance by counsel before considering the prejudice issue. *Id.* at 697.

To establish prejudice, the second element, Simmonds "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The state court's factual findings are presumed correct unless rebutted by the habeas petitioner by clear and convincing evidence. *McAdoo v. Elo,* 365 F.3d 487, 493-94 (6th Cir. 2004).

Simmonds contends that counsel was ineffective for failing to discover and present other compelling mitigation evidence. He admits that his counsel's argument included some relevant facts on his "age, immaturity, low IQ, substance abuse, and father's criminal activity." As a competency challenge, counsel offered two psychological evaluations of Simmonds. *Simmonds,* 2017-Ohio-2739 ¶ 7. Psychologist David Tennenbaum prepared a report for an unrelated juvenile burglary case, and psychologist Jaime Adkins prepared a report for one of the cases for which Simmonds was bound over from juvenile court. *Id.* At trial, Simmonds' counsel made the following remarks:

> This case has been a recipe for disaster. We have a 17-year-old African-American male, fractured family, one out of seven children on his mother's side, one out of twelve on his father's. We have criminal activities on the part of a parent who acted as a role model. Drug use and abuse, alcohol, immaturity, vulnerability, weapons, older boys whom he looked up to. He has a ninth-grade education, an IQ range in the first percentile.

*Id.* Counsel argued that Simmonds' IQ, emotional immaturity, and vulnerability were mitigating factors, and that Simmonds was easily influenced. She noted that the reports indicated drug use before one of the shootings. Counsel argued that Simmonds' age and IQ were extremely relevant, and noted that, based on the psychologist's conclusion, Simmonds was "remarkably and

emotionally immature, [an] angry but lost child." She indicated that Simmonds takes multiple medications, and has used alcohol, marijuana, and cocaine. Counsel argued that Simmonds is still developing, that his character had not yet formed, and that he has the capacity to change. Counsel cited a study regarding youth sentencing and the effects of a life without parole sentence on a prisoner. Lastly, counsel cited Ohio Supreme Court precedent and United States Supreme Court cases of *Miller v. Alabama*, 567 U.S. 460, 471 (2012), *Roper v. Simmons*, 543 U.S. 551 (2005), and *Graham v. Florida*, 560 U.S. 48 (2010), to highlight that juveniles are "constitutionally different from adults for purposes of sentencing" and enumerated the sentencing factors for the court to consider when sentencing a juvenile offender to life without the possibility of parole.

Simmonds asserts that counsel nonetheless failed to "fully investigate mitigating information." Simmonds states that his trial counsel found out about major Supreme Court developments concerning juveniles only a few days before sentencing. Simmonds further claims that his counsel did not hire an investigator or a mitigation expert. Had counsel taken these steps, Simmonds asserts that the trial court would not have sentenced him to life without the opportunity of parole. In support of this, Simmonds lists Supreme Court cases that address counsel's mitigation and investigative duties to capital offense defendants.

In *Williams v. Taylor*, the Supreme Court held that counsel's failure to present voluminous mitigating evidence at sentencing for a capital crime could not be justified as a tactical decision because counsel had not "fulfill[ed] their obligation to conduct a thorough investigation of the defendant's background." 529 U.S. at 396. Likewise, failure to discover all reasonably available mitigating evidence can support a finding of ineffective assistance in death penalty cases. *Wiggins v. Smith*, 539 U.S. 510, 521-24 (2003).

Unlike in capital cases, Simmonds' counsel did not have a "duty to investigate and present mitigating evidence" that is an "extensive and generally unparalleled investigation into personal and family history."[1] Simmonds argues that sentencing a juvenile to life without parole is akin to a death sentence. We cannot conclude, however, that the same mitigation and investigation requirements as those for capital cases apply to juvenile offenders sentenced to life without parole. Even in death penalty cases, the Supreme Court has held that these are merely guidelines, not mandatory requirements. *See Van Hook*, 558 U.S. at 17 (explaining that this Circuit erroneously treated the ABA Guidelines as "inexorable commands with which all capital defense counsel 'must fully comply,'" instead, they are "only guides[.]").

We have also previously noted that "the failure to present additional mitigating evidence that is 'merely cumulative' of that already presented does not rise to the level of a constitutional violation." *Broom v. Mitchell*, 441 F.3d 392, 410 (6th Cir. 2006) (quoting *Clark v. Mitchell*, 425 F.3d 270, 286 (6th Cir. 2005)). The new evidence that Simmonds presented with his habeas petition—including expert evidence on Simmonds' upbringing and psychology, as well as affidavits from two family members speculating whether he faced hardships as a child—does not amount to "voluminous mitigating evidence" that could have been discovered by the trial counsel, but rather could be considered merely cumulative to evidence trial counsel already presented.

"[T]he new evidence that a habeas petitioner presents must differ in a substantial way—in strength and subject matter—from the evidence actually presented at sentencing." *Clark*, 425 F.3d at 286 (quoting *Hill v. Mitchell*, 400 F.3d 308, 319 (6th Cir. 2005)). "[T]here is no prejudice when the new mitigating evidence 'would barely have altered the sentencing profile presented' to the

---

[1]*See* ABA Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases at 1021-1022 (2003), https://www.americanbar.org/content/dam/aba/administrative/death_penalty_representation/2003guidelines.pdf; *see also Bobby v. Van Hook*, 558 U.S. 4, 16-17 (2009).

decisionmaker . . . ." *Sears v. Upton*, 561 U.S. 945, 954 (2010) (per curiam) (quoting *Strickland*, 466 U.S. at 700). Simmonds' counsel presented new mitigating evidence. But, as in *Strickland*, this new evidence "would barely have altered the sentencing profile presented to the sentencing judge." *Strickland*, 466 U.S. at 700.

We recognize that there are "significant gaps between juveniles and adults" that make children "constitutionally different from adults for purposes of sentencing." *Miller*, 567 U.S. at 471; *see also Roper*, 543 U.S. at 551; *Graham*, 560 U.S. at 48; *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016). "First, children have a 'lack of maturity and an underdeveloped sense of responsibility,' leading to recklessness, impulsivity, and heedless risk-taking. Second, children 'are more vulnerable . . . to negative influences and outside pressures' . . . . And third, a child's character is not as 'well formed' as an adult's." *Id.* (quoting *Roper*, 543 U.S. at 569-70). The Supreme Court in *Miller* held that even though a juvenile homicide offender could be sentenced to life without parole, the court was required to conduct an individualized hearing and make a finding that the defendant's crime was not the product of "unfortunate yet transient immaturity." *Miller*, 567 U.S. at 479-80.

Despite recognizing these differences in juvenile offenders, we may grant relief only if the Ohio court's decision rejecting Simmonds' ineffective assistance claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is . . . difficult." *Harrington,* 562 U.S. at 105. The standards under *Strickland* are highly deferential, and "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable" but rather if there is "any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

Simmonds' counsel presented past psychological reports, described his IQ, his family history, and listed all relevant state and Supreme Court caselaw to make a compelling argument against sentencing Simmonds to life without the possibility of parole. Counsel did not retain a mitigation expert, but counsel had no duty to do so. In support of his habeas petition, Simmonds presented, among other documents, expert evidence on his history and psychological profile and two affidavits from family members who vaguely allege that Simmonds' mother had drug abuse issues, and that he may have left to stay with his uncle due to trouble at home. This cumulative evidence is not enough to overcome his burden of showing by clear and compelling evidence that the state court unreasonably applied either prong of *Strickland*.

A habeas petitioner has a high bar to meet: he must "show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (quoting *Harrington,* 562 U.S. at 103). Simmonds fails to meet AEDPA's stringent requirements and is therefore ineligible for habeas relief. *See* 28 U.S.C. § 2254(d).

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.